EDWARD C. BELLAMY, ET AL., APPELLANTS, v. SAMUEL C. BELLAMY, APPELLEE.

The 28th section of the act of November 7th, 1828, in relation to proceedings in Chancery, was passed solely to provide for the enrollment of final decrees, and to invest them with the lien in that section mentioned, as well as to entitle a party to process thereon—appeals and petitions for rehearing being only incidentally mentioned, as prohibiting the enrollment, the lien and final process, where either of those steps are taken.

The 32d section of the same act, which provides for rules of practice in Chancery, does not give to parties the same right of appeal, and in the same cases, in which appeals were allowed from the High Court of Chancery in England to the House of Lords.

The act entitled " An act regulating the mode of suing out writs of error and prosecuting appeals in the Court of Appeals of the Territory of Florida," approved February 10th, 1832, is still in force, and by that act, as well as by the act of November 12th, 1828, an appeal is allowed only from a final judgment, sentence, or decree. An appeal does not lie, under any law in force in this State, from an interlocutory decree.

Where money is directed to be paid into Court, or property to be delivered to a receiver, or to a new trustee, or where any thing is to be done which may be the subject of exception or appeal, the decree is not final, but interlocutory only.

Appeal from a decree of the Circuit Court of Jackson County, at the Fall Term, 1850, made by the Hon. George S. Hawkins, Judge of the Western Circuit.

The decree appealed from was made in a cause wherein Samuel C. Bellamy was complainant, and Edward C. Bellamy and others defendants, and was as follows, viz :

This cause came on to be heard at the Spring Term, 1850, of this Court, before the Honorable George S. Hawkins, Judge of the Western Circuit, upon bill, answer of defendant, Edward C. Bellamy, replication, exhibits and proofs taken in this cause, and the same having been fully argued by counsel for both parties, and the matters in dispute duly considered, and the judgment and decree to be given in the premises fully advised of, his Honor doth think fit, and so orders, adjudges and decrees :—

*First.*—That the deed of conveyance of the said complainant to the said defendant, Edward C. Bellamy, bearing date the thirteenth day of December, in the year of our Lord one thousand eight hundred and forty-five, (1845,) mentioned in and exhibited with said complainant's bill of complaint, for the reasons at large set forth in the opinion delivered in this cause, was and is wholly inoperative and void; and that the said Edward C. Bellamy should and ought to account for the trust property and funds conveyed by and possessed under the trust deed from the said complainant to the said Edward C. Bellamy, bearing date the nineteenth day of November, in the year of our Lord one thousand eight hundred and forty-four, also mentioned in and exhibited with complainant's said bill of complaint.

*Second.*—It is further adjudged and decreed that the said defendant, Edward C. Bellamy, holds that portion of the trust property, and profits and issues thereof, purchased by

him at the sales under execution by the sheriff of Jackson County, on the first Mondays of January and February, 1846, subject to the uses and trusts limited and appointed in the aforesaid deed of the nineteenth of November, in the year one thousand eight hundred and forty-four, and is liable to account therefor.

*Third.*—It is further ordered and decreed that the defendant, Edward C. Bellamy, account before George F. Baltzell, Esq., one of the Masters in Chancery of this Court, upon and at such time as shall be appointed by said master, of and concerning the aforesaid trust and the execution thereof, rendering a full, true and perfect account in detail of all and singular the trust property and funds committed to his charge, and the rents, issues, profits, crops and proceeds issuing out of the same, or accruing therefrom, which he, or any other person for him, or by his consent or procurement, received therefrom, or which he might, could and ought, by the exercise of reasonable diligence, to have received. Said accounting to be upon due notice to the complainant or his solicitor, and according to the usual mode of proceedings in the office of the master; and that said master make report of said accounting, and the evidence taken before him thereon, with all convenient speed.

*Fourth.*—It is further ordered and decreed that the said Edward C. Bellamy be removed from his said trust, and ousted of his said trust estate; and that he deliver over to the receiver hereinafter appointed all of the said trust property and funds, and the rents, issues and profits, and crops arising from or issuing out of the said trust property, now in his hands, power, possession or control, and thereafter stand and remain restrained and enjoined from any interference with, control over, or management of, the said trust property, until the further order of this Court in the premises.

*Fifth.*—It is further ordered and decreed that Frederick R. Pittman, of the County of Jackson be appointed Recei-

ver of this Court in this cause, upon his entering into bond in the penalty of ten thousand dollars, (10,000,) with good and sufficient security, to be approved of by the master aforesaid, and conditioned for the due and faithful performance of his duties; and that said Receiver shall, after qualification, with all convenient speed, demand and receive from the said Edward C. Bellamy the trust property hereinbefore mentioned, and shall rent out the plantation, and hire out the slaves at public auction by the year, until the further order of the Court in the premises, and shall render and file in the office of the Clerk of this Court annual accounts and returns of his actings and doings in the premises, and of the amounts of funds and securities in hand.

*Sixth.*—It is further ordered and decreed that the said George F. Baltzell, master as aforesaid, do also proceed to ascertain and report to this Court the names of the creditors of the said Samuel C. Bellamy, who are entitled to the benefits of the trust estate heretofore conveyed by the said Samuel C. Bellamy to the said Edward C. Bellamy as aforesaid, with the amounts due to each respectively, and the respective order of priorities ; and for this purpose, the said master shall make advertisement for the presentation of such claims, within such time as he shall deem reasonable and proper in the premises ; and that all further directions are reserved until the coming in of said reports.

*Archer*, for Appellee, moved—

To dismiss the appeal, on the ground that the decree was not final but interlocutory only, and that, by the law of this State, an appeal does not lie from an interlocutory decree. The argument of the solicitor for appellee, and the authorities referred to and relied on in support of the motion, are stated in the opinion delivered by the Court.

*Long*, (with whom was *Finley*,) for Appellant, resisted—

The motion to dismiss upon the two grounds stated in the opinion of the Court.

Upon the first ground, he cited the Chancery act of 1828, as quoted in the opinion, and showed by authorities not questioned, that, by the practice of the High Court of Chancery in England, interlocutory decrees might be appealed from.

Upon the second point, he relied upon the principle of the case cited on the other side, from 6th Howard's Reports, the substance of which is stated in the opinion of this Court. He also cited and relied upon a case in one of the Alabama Reports, as in all respects similar to this, in which the appeal was allowed. He also cited 2d Daniel's Chancery Practice, 1199, and notes and authorities there cited, to prove that a decree is final to the extent that it is ordered to be executed, and contended that, upon principle and sound reason, as well as upon authority, a decree is final as to such part of the case as does not remain open for further proof or argument in the court rendering it, or where the court does not design again to adjudicate the point. Such a decree, though there may remain other questions in the cause to be adjudicated for other purposes, is final, if execution is to follow. An appeal alone supersedes the execution of a decree, and to dismiss such an appeal, is equivalent to a denial of the right of appeal. In this cause, it is plain that the decree takes from E. Bellamy the property, without any indemnity to him, by bond or otherwise, to pay such damages as he may thereby incur, and contemplates no future action upon that question. The property is only given to a Receiver, in order to determine how much of the same complainant's creditors shall have, and how much will remain for him. Defendant is turned out of possession by the terms of the decree, and that to be followed by instant execution, if the *supersedeas* produced by this appeal is dissolved by dismissing the appeal. The execution of this decree may ruin defendant, and he is wholly without remedy or redress, even although years hence this Court may decide that he was wrongfully dispossessed.

Mr. Long also contended that if this decree was thus made final prematurely, and ordered to be executed too soon, because before an appeal would lie on the whole cause, still this Court ought to allow this appeal, to enable it to reform the decree in this respect, and thus prevent the deprivation of a constitutional right, and the ruin of a citizen.

LANCASTER, *Justice,* delivered the opinion of the Court, as follows:

This case comes by appeal from Jackson Circuit Court, and a motion is made to dismiss the appeal because the decree rendered in the case below is not final.

The appellants, by counsel, contend that this Court has jurisdiction to entertain appeals in chancery cases from interlocutory decrees, and if not, that the decree rendered in this case is final and the appeal is well taken.

Let us first consider the right of a party to appeal to this Court from an interlocutory decree. It is contended by counsel for appellant that the right to appeal may be inferred from the provisions of the 28th section of the chancery act of November 7th, 1828, (Duval's Compilation, 135, Thompson's Digest, 461,) and that the 6th (properly 32d) section in the same act, (Duval's Compilation, 137 and Thompson's Digest, 459,) which provides for rules of practice in chancery, gives to parties the same right of appeal, and in the same cases, in which appeals were allowed from the High Court of Chancery, in England, to the House of Lords.

It may be here remarked that the 28th section of the chancery act referred to, was passed solely to provide for enrollments of final decrees in chancery, and to invest them with the powers of lien in that section mentioned, and to entitle a party to process or other proceedings thereon; and appeals and petitions for rehearing were but incidentally mentioned in the section—not to provide or invest parties with rights which these proceedings might respectively se-

cure, but simply, where a party had taken either of these steps according to law, to prohibit the enrollment and its consequent lien, and the final process which the other party might issue thereon.

The view taken of the section 32, in relation to the rules of practice is not more satisfactory ; for, conceding that the House of Lords entertained appeals from the High Court of Chancery, in England, upon interlocutory decrees, that was done on petition to the Lords, setting forth all the proceedings desired to be appealed from, which petition and its statements the Lord Chancellor was required by the Lords to admit or deny. Being admitted, the Lords had the case before them and might, in the plenitude of unlimited power, proceed as they thought fit. No such power is known to have been at any time vested in the late Court of Appeals or in this Court. That section, in terms, provides " that the " rules of practice in the courts of equity of the United " States, as prescribed by the Supreme Court thereof under " the act of Congress of the 8th of May, 1792, where pro- " vision is not made by this act, shall be rules for the prac- " tice of the courts of this Territory when exercising equity " jurisdiction. And when the rules of practice so directed " by the Supreme Court and the provisions of this act do " not apply, the practice of the courts shall be regulated by " the practice of the High Court of Chancery, in England."

Now, if it be said that the right of appeal to the Supreme Court of the United States is not a right established by a rule of that Court, but a right given by act of Congress, and therefore not one of the rules adopted into practice here by the passage of the above recited section, so also, with equal force and truth, it may be said the right of appeal from the High Court of Chancery, in England, is not a rule of practice of said Court, but a rule of right imposed on the Court by the arrogated omnipotent power of Parliament.

Rules of practice are prescribed by the Courts, for the more safe and convenient transaction of business ; but rules

of right are prescribed by the Legislature, the better to ascertain what rights are reserved or secured to the person. We must, therefore, look elsewhere for the right of appeal.

The fifth section of the act of Congress, entitled " an act to amend the several acts for the establishment of the Territorial government of Florida," approved May 15th, 1826, after providing for writs of error and appeal to the Court of Appeals of the Territory on all final decisions of the Superior Courts arising under the Constitution and laws of the United States, where the matter is of the value of one hundred dollars exclusive of costs, goes on further to provide, " and in all other cases writs of error and appeal may be " taken and prosecuted from said Superior Courts to the " Court of Appeals in such manner as the Legislative Coun- " cil have directed or shall direct." By an act of the Legislative Council, entitled " an act regulating the mode of suing out writs of error and prosecuting appeals in the Court of Appeals of the Territory of Florida," approved November 12th, 1828, just five days after the chancery act before noticed was approved, the manner of taking appeals was provided for. As much of the first section of that act as is here deemed necessary is in these words, viz : " That " if a party in either of the Superior Courts of this Territo- " ry shall feel aggrieved by a final judgment, sentence or " decree, made or pronounced by any or either of said Courts, " it shall and may be lawful for such party, at the time " when such judgment, sentence or decree is rendered or " pronounced, to obtain in Court, &c., his appeal." See pamphlet Laws of the year 1828, page 44—5. This section of this act, as far as after diligent examination we have been enabled to discover, was only repealed by an act of the same title, approved February 10th, 1832, and which is now in force. By both laws an appeal is allowed only from a final judgment, sentence or decree.

But it is contended the phrases were used loosely by the Legislature, and only meant to provide for appeals at com-

mon law and not in chancery. The jurisdiction of the Courts from whose decisions these laws meant to provide an appeal, extended as well to equity as law, and when the phrase is used, "shall feel aggrieved by a final judgment, sentence or decree, made or pronounced by any or either of said Courts," it is difficult to imagine the Legislature meant to restrict the right of appeal to less than the extent of the jurisdiction appealed from. But the second section of the act of February 10th, 1832, uses the terms judgment given, decree rendered or sentence pronounced, showing familiarity with these terms and using them in their legal acceptation. Moreover, there is no other act on the statute book providing for appeals in chancery cases, except the act of 11th February, 1832, Thompson's Digest, 462. Can it be presumed that a Legislature that so carefully provided for appeals on judgments at common law should have totally failed to provide a similar remedy from decrees in chancery?

The act of 11th February, 1832, provides that appeals may be taken from final decrees in two years ; but it also provides that, if not taken in the time fixed by law in other cases, they shall not operate as a *supersedeas*, except on an order of a Judge of the Supreme Court. Now, will any one contend that an appeal taken from a final decree of the Circuit Court, conformably to the act of 10th February, 1832, will not operate as a *supersedeas*, and that a party below may still proceed as if no such appeal had been taken, or that such appeal ought to be dismissed as not authorized by law? We are clearly of opinion that the right to bring appeals into this Court is declared and provided in the act of 10th February, 1832, as well in chancery cases as in those at law, and, in relation to final decrees in chancery is somewhat extended and modified by the act of the 11th of the same month; and that the right under the former act is by its terms limited to final judgments, sentences or decrees, while by the latter it is limited to final decrees. We are equally clear that no appeal lies to this Court from an interlocutory decree.

It remains yet to be considered whether the decree in this case appealed from is, in its character, interlocutory or final.

The acts of Congress providing for appeals from the Circuit to the Supreme Courts of the United States, give the right only on final judgments or decrees. The question, therefore, as to what are interlocutory and what final decrees, has received considerable attention from that Court. In the case of Perkins v. Fourniquet et al., 6 Howard, 206–8, the appellees, children of the deceased wife of appellant, alleged that during her life there existed, in the State of Louisiana, between her and the appellant, her husband, a community of *acquets* and *gains*. The appellant, by his answer, denied any such community. Upon the hearing, the Court decreed that the community did exist and that the appellees, a part of the heirs, had a right to recover their proportion of all their deceased mother's rights of community which accrued during her coverture with appellant, and referred the matter to a master in chancery to take and report an account of the *acquets* and *gains*, prescribing fully the manner in which the lands acquired were to be divided and the accounts taken. All other matters in controversy between the parties were reserved until the coming in of the report of the master. The Court thereon said: " This clearly is " not a final decree in any respect. It is the common interloc- " utory order or decree passed by courts of chancery in cases " of this kind, and it is absolutely necessary to prepare the " case for a final hearing and final decree, wherever the " complainant is entitled to partition of property or an ac- " count."

In the case of Pulliam et al. v. Christian, 6 Howard, 212, where the bill was filed to annul and vacate a deed of trust for the benefit of creditors and a decree was passed to set aside said deed, the Court said : " This decree is final only " as to the trust deed. All the matters arising under the " trust are referred to a commissioner for a statement of the " account, to enable the Court to enter a final decree. There

" is no sale or change of the property ordered, which can
" operate injuriously to the parties ;" and the decree, not
being final as to the whole matter in controversy, the ap-
peal was dismissed.

In the case of Young et al. v. Smith et al., 15 Peters, 287,
the bill was filed by residuary legatees against the execu-
tors of an estate. The matter was referred to a master to
take an account. He made his report—it was referred back
—he again reported, and exceptions filed were disallowed.
The Circuit Court decreed that the report should be accept-
ed and that the complainants should have execution for the
sum reported in the hands of the executors, and, as to the
residue of the debts due to the estate, as soon as they or part
of them should be collected, the amount should be paid into
Court, for distribution to be made under the direction of the
Court. The Supreme Court held, (Mr. Justice Story deliv-
ering the opinion,) that this decree is an interlocutory and
not a final decree, in the sense of the act of Congress. It
does not dispose of the whole matter in controversy between
the parties.

In the case of Brown v. Swann, 9 Peters, 1, the complain-
ant filed her bill for injunction against a judgment at law
of defendant, alleging usury and part payment, and the in-
junction was granted, which was afterwards in part dis-
solved ; and afterwards, upon a hearing of the bill, an-
swer, demurrer of the defendant, exhibits and depositions,
the Court decreed that the demurrer be overruled—that the
complainant has sustained her allegation of usury—that
payments of a part of the judgment at law had been made
—that there remains a specified sum yet due—and that
a claim for a further credit of fifty dollars on that sum, of
which the Court is not sufficiently advised, is demanded by
complainant. Thereupon, the Court adjudged and decreed
that the injunction awarded the complainant be made per-
petual for all except the specified sum—that the defendant
be at liberty to proceed under her judgment at law for the

specified sum, except the fifty dollars claimed as a credit by the complainant; and this cause was continued for further consideration as to the said sum of fifty dollars. In this state of the case an appeal was had, and Mr. Chief Justice Marshall delivered the opinion of the Court, dismissing the appeal with costs, because the appeal was granted before there was a final decree in the case.

In the case of Barnard et al., v. Gibson, 7 Peters, 650 to 658, Mr. Justice McLean delivered the opinion of the Supreme Court. The decree appealed from awarded against the defendants a perpetual injunction, restraining them from constructing or using in any manner, or from selling or disposing of certain planing machines which the complainant alleged he had the exclusive right to, under letters patent; and it was referred to a master to report what damages the complainant had sustained by the infringement of his patent by the defendants—the report to be made in term-time to the Court, or in vacation to one of the Judges; and the question of costs, and all other questions in the cause, were reserved until the coming in of the master's report. The Court say the decree in this case is not final within the decisions of this Court. The injunction prayed for was made perpetual, but there was a reference to a master to ascertain the damages by reason of the infringement; the bill was not dismissed, nor was there a decree for costs.

The case of Forgay et al. v. Conrad, 6 Howard, 201, seems to recognize other principles than those laid down in the foregoing cases. In that case all the questions between the parties are finally adjudicated and disposed of—execution awarded against one of the defendants, and certain lands and negroes decreed to be delivered by them to complainant, as assignee in bankruptcy—the bill being retained to have an account of the rent of the lands and hire of the slaves, stated by a master. The decree concludes as follows : " So much of said bill as contains or relates to matters "·hereby referred to the master for report, is hereby retained

" for further decree in the premises; and so much of said " bill as is not now, nor has been heretofore adjudged and " decreed upon, and which is not above retained for the " purposes aforesaid, be dismissed without prejudice, and " that the said defendants do pay the costs." This decree, (Mr. Chief Justice Taney delivering the opinion of the Court,) is held to be final, so as to authorize an appeal. He says, according to the last paragraph in the decree, the bill is merely retained for the purpose of adjusting the accounts referred to the master; in all other respects the whole of the matters brought into controversy are finally disposed of, as to all of the defendants, and the bill as to them is no longer pending. "If these appellants, therefore, must wait until " the accounts are reported by the master and confirmed by the Court, they will be subjected to an irreparable injury; for the lands and slaves which they claim will be taken out of their possession and sold, and the proceeds distributed among the creditors of the bankrupt, before they can have an opportunity of being heard in this Court in defence of their rights." The Chief Justice says, " When the decree " decides the right to the property in contest and directs it " to be delivered up by the defendant to the complainant, " or directs it to be sold, or directs the defendant to pay a " certain sum of money to the complainant, and the com- " plainant is entitled to have such decree carried immedi- " ately into execution, the decree must be regarded as a final " one to that extent, and authorizes an appeal to this Court, " although the bill is retained for the purpose of adjusting, " by a further decree, the accounts between the parties."— " This rule, of course," he says, " does not extend to cases " where money is directed to be paid into Court, or property " to be delivered to a receiver, or property held in trust to " be delivered to a new trustee appointed by the Court, or " to cases of a like description. Orders of that kind are " frequently and necessarily made in the progress of a cause, " but they are interlocutory only, and intended to preserve

" the subject matter in dispute from dilapidation or waste, " and to keep it within the control of the Court, until the " rights of the parties can be adjudicated by a final decree."

The law of Florida providing for appeals, is similar in its terms to that of the United States, and allows appeals from such final decisions as they are allowable from in the Supreme Court of the United States. We now have seen the construction given to the act of Congress by the Supreme Court ; and considering the great learning, ability and virtue which have ever characterized the members of that bench, we do not feel at liberty to give a different construction from that they have given upon the same identical legal terms—more especially when that construction corresponds with our own best judgment of the proper import of the terms used in the law. And we think, moreover, if it had been the object of the Legislature to guard against a multiplicity of appeals in the same case, no form of words could have been well devised better calculated to promote that end. We do not, therefore, concur with the Court in Alabama, in distinguishing between the final judgment and the last judgment, so as to make that a final judgment or decree, which must needs, be followed by another judgment or decree, which last may itself be the subject of appeal.

We will now look into the decree appealed from in this case. That decree adjudges the deed of conveyance of the complainant to the defendant, bearing date 13th day of December, 1845, exhibited with the bill, to be wholly inoperative and void ; that the defendant, Edward C. Bellamy, should and ought to account for the trust property and funds, conveyed by and possessed under the trust deed, bearing date the 19th day of November, 1844 ; that the defendant, E. C. Bellamy, holds that portion of the trust property, and profits and issues thereof, purchased by him at sales under execution, by the sheriff of Jackson County, on the first Mondays of January and February, 1846, subject to

tbe uses and trusts limited and appointed in the deed of the 19th day of November, 1844. It is further decreed that the defendant, E. C. Bellamy, account before George F. Baltzell, a Master in Chancery, of and concerning the said trust, rendering a full, true and perfect account in detail of all and singular the trust property and funds committed to his charge, and the rents, issues, profits, crops and proceeds, issuing out of the same, or accruing therefrom; that he be removed from his said trust, and ousted of his said trust estate, and that he deliver over to the Receiver hereinafter appointed, all of the said trust property and funds, and the rents, issues and profits, and crops, arising from, or issuing out of, the said trust property, and that he stand and remain restrained and enjoined from any interference with, control over, or management of, the said trust property, until the further order of the Court in the premises. It is further ordered that Frederick C. Pittman be appointed Receiver of the Court in this cause, upon his entering into bond in the penalty of ten thousand dollars, with good and sufficient security to be approved by the master, conditioned for the due and faithful performance of his duties. It is then ordered that the Receiver shall take possession of said trust property, and rent out the plantation, and hire out the slaves at public auction by the year, until the further order of the Court, and shall render and file in the clerk's office of the Court, annual accounts of his actings and doings in the premises, and of the amount of funds and securities in hand. It was further decreed that the master proceed to ascertain and report to the Court, the names of the creditors entitled to the benefits of the said trust estate, with the amount due to each respectively, and their respective order of priorities, and to advertise, in a reasonable and proper manner, for the presentation of such claims; and all further directions are reserved until the coming in of said reports.

It is very plain that this decree is not more, or so nearly

a final decree, as any of those we have before mentioned as having been decided by the Supreme Court to be not final, nor is there any precise similitude between it and the case of Forgay, et al. v. Conrad, which will authorize us to entertain this appeal on the authority of that case. There the property was decreed to be delivered to the complainant— here to a Receiver of the Court. There the property, if received by the complainant, who was assignee of a bankrupt, would have gone into distribution among the creditors of that bankrupt—here it is retained in the custody, and under the control of the Court. There if the appellants waited to appeal, until the accounts were reported by the master, and confirmed by the Court, they were subject to an irreparable injury—here no such injury can ensue. It was, moreover, laid down in that case, that where money is directed to be paid into court, or property to be delivered to a Receiver, or property held in trust to be delivered to a new trustee appointed by the court, or in cases of a like description, such orders or decrees are interlocutory only, and are frequently and necessarily made in the progress of a cause. We think, also, the Supreme Court went as far in assuming jurisdiction of the appeal, in the case of Forgay v. Conrad, as they would willingly go, and were rather surprised into an assumption of jurisdiction, by the perception of irreparable injury to the appellants, if they refused to entertain the appeal, than by any strong opinion that the decree was final; because they say, " undoubtedly it is not final in the strict technical sense of that term," and because they admonish chancellors in the Circuit Courts not to shape their interlocutory decrees so as to give them a final effect. The opinion delivered in the case of Forgay v. Conrad is an able and lucid one, and deserves well the serious consideration of every chancellor, when engaged in making an interlocutory decree.

There are many things required by the decree given in this cause to be done, which, when done, may be the sub-

33

ject of exception, and, consequently, of appeal.   If an ap-
peal should be taken at every step, where a party may feel
dissatisfied or aggrieved, there is no foreseeing when a
cause would end, and the delays of chancery would become
as justly a blot and reproach on the jurisprudence of this
country, as they now are, and long have been, to that of
England.

We consider the decree appealed from in this case as an
interlocutory, and not a final judgment, sentence, or decree.
The appeal must, therefore, be dismissed, and Samuel C.
Bellamy, the appellee, must recover his costs.