JUNE TERM, 1896. 139

J., M. & P. R. & N. Co., & M. T. Co. v. Broughton et al.—Syllabus.

38 139¹
44 622
44 682
48 237

38 139
e52 524

JACKSONVILLE, MAYPORT & PABLO RAILWAY & NAV-
IGATION COMPANY, AND THE MERCANTILE TRUST
COMPANY, APPELLANTS, VS. GEORGE F. BROUGH-
TON ET AL., APPELLEES.

1. All parties against whcm a joint decree in substance has been rendered must unite in an appeal therefrom, or the appeal must be taken in the name of all with summons and severance, or equivalent proceedings, as to those who decline to unite in prosecuting the appeal; but any one party who may be aggrieved by a decree as to his separate interest, or several parties who may be aggrieved as to their united interests, may enter, the former his individual appeal, and the latter their joint appeal, although there may be numerous parties adjudged against by the same decree, but not united in interest with such individual, or joint parties in the matter so decreed as to him or them.

2. Where several appeals are permissible under the rule, each appellant may enter his separate appeal, and should file with the Clerk of the Circuit Court an assignment of the errors he intends to rely on in the appellate court.

3. Where an appeal in chancery is entered on the 20th day of a month, the filing of an assignment of errors with the Clerk of the Circuit Court on the 30th day of the same month, will be within the time prescribed by special rule 4, regulating appeals in chancery, that is, within ten days after the appeal was entered.

4. On motion to dismiss an appeal on the ground that no citation had been issued, served and returned in the cause, it appeared that citation had been issued by the proper clerk in due time, citing certain parties as appellees to appear at the proper term of the Supreme Court, and was served on all of said parties in person or by attorneys more than twenty-five days before the first day of the term to which the writ was returnable: *Held*, The specific objection made should be overruled without reference to any formal defects that may exist either as to the issuance or service of the citation mentioned.

5. Where separate appeals in a case, as authorized by the rule, have been entered by different parties to the same term of the Su-

140 SUPREME COURT.

J., M. & P. R. & N. Co., & M. T. Co. v. Broughton et al.—Statement.

preme Court, and one transcript of the record has been made upon all the assignments of errors and written directions filed, service of a copy of the transcript on the opposite parties by any one of the appellants will be sufficient.

6. Where there are two or more defendants in error or appellees represented by *different attorneys*, each party or his attorney must be served with a copy of the transcript unless it is waived; but if two or more, or all, of the defendants in error or appellees are represented by the *same attorneys*, service of the copy on such attorneys will answer for all the parties whom they represent.

7. The purpose of the legislation as to chancery appeals from interlocutory orders or decrees, enacted in this State prior to the passage of the act of 1893 (Chapter 4130), was to provide for separate appeals from such orders or decrees before final decree, or end of the cause, without interfering with the right to have all prior interlocutory orders or decrees, from which no appeal had been entered, opened for consideration on an appeal from the final decree when connected with the merits thereof; and the last mentioned act (Chapter 4130) makes no other change than to limit the time in which both characters of appeals may be entered to six months.

8. Motion was made to dismiss an appeal because it was entered more than six months after the final decree was rendered, and it appeared that several decrees and orders had been entered in the cause, and some of them embraced in the entry of appeal had been rendered within six months from the date of such entry: *Held*, That the motion should be denied, as it clearly appeared that the appeal from some of the decrees appealed from had not been barred when the appeal was taken.

Appeal from the Circuit Court for Duval county.

Motions to dismiss appeals.

### STATEMENT.

Appellee, George F. Broughton, filed a bill in August, 1893, against the appellant companies, corporations, the one existing under the laws of Florida, and the other under the laws of New York. The object of

the bill, as against the railroad company, was to en-
force a lien claimed to exist under the laws of this
State for the construction of a trestle, and for other
work on the line of the company, and it was filed by
complainant Broughton in his own behalf and all other
creditors of the company who would come in, prove
their claims and share in the cost of the suit. It is al-
leged that the trestle was completed in July, 1892, un-
der a contract made in the March previous, and the
other work alleged to have been performed on the road
was in June, 1893. Further, that a mortgage, bearing
date January 1st, 1892, was executed by the railroad
company to the Mercantile Trust Company, as trustee,
to secure an issue of the former company's bonds to
the aggregate sum of two hundred and fifty thousand
dollars, to be certified by the Trust Company, and the
mortgage covered all the property, right of way and
franchises of the railroad company. That none of the
bonds to be secured by said mortgage were placed in
the hands of the Trust Company until the 10th day of
March, 1893. It was also alleged that taxes and large
sums due for labor and material in the construction of
the road were unpaid, and a number of suits had been
instituted against the railroad company; that the earn-
ings of the road were taken by the president, and not
applied to the payment of the said debts of the com-
pany, or paid to the treasurer, the proper custodian,
and that a sale of the railroad, its rolling-stock, fran-
chises and property would not bring enough to pay the
debts of the company. The bill prays for an account
of what may be due complainant and such other cred-
itors as might come in, prove their claims and share in
the costs of the suit, and that complainant and others
having lien claims of equal dignity with his, might be

adjudged to have liens upon said railroad, rolling-stock, machinery and franchises superior to the holders of any of the bonds secured by the mortgage to the Trust Company. The sale of the railroad and all of its property to pay the claims was asked, and also the appointment of a receiver to take charge of the railroad and its property pending the litigation.

In the September following John S. Fairhead, Henry C. Strawn and Benjamin R. Powell, partners under the firm name of Fairhead, Strawn & Co., and Joseph Hathorne, severally, filed petitions of intervention alleging that petitioners, severally, held lien claims against the railroad company, and asking to be admitted as parties complainant and their claims enforced. An order was subsequently made in the same month admitting petitioners, severally, as complainants in the cause. On the 7th of September, 1893, the railroad company answered the bill, alleging defenses not necessary to be stated. Exceptions were filed by complainant, Broughton, to portions of the answer filed by the railroad company, and the exceptions were sustained. Replication was filed to the remaining portions of the answer.

The railroad company demurred, in October, 1893, to the petitions of intervention filed by Fairhead, Strawn & Co. and Joseph Hathorne, and it appears that the demurrer to the petition filed by the former was overruled and time given to answer. Upon a failure to answer the petition within the time allowed, a default was entered against the railroad company.

On the 17th of November, 1893, the judge granted a decree *pro confesso* against the Trust Company, which, after reciting that service had been had on said company by publication in the manner prescribed by the

statutes of this State, and the company was in default for want of a plea, demurrer or answer, ordered the bill of complaint to be taken as in all things confessed by said company, and that the cause proceed *ex parte* as to it. The affidavit for order of publication and proof of publishing same are found in the transcript.

On the 3d of January, 1894, the cause was referred to a special master to take the depositions of witnesses to be produced before him and report the same to the court. The master reported testimony, and upon it and other testimony admitted on the hearing a decree was rendered March 6th, 1894, adjudging that complainant have the relief prayed in and by his bill, and the cause was referred to a special master, with all the powers of a master in chancery, to take ard state an account of what was due complainant and any other creditor of the railroad company who would come in and prove his claim before the master, and that the latter report to the court the order in which the claims he finds due from the railroad company to the several creditors proving same, are entitled to share in the proceeds of the sale of the property of the railroad defendant. The master was directed to give notice to all creditors and bondholders of the railroad company to come in and prove their claims, within a time specified, or they would be barred, and permission was given any creditor proving claims to contest the claim of any other like creditor.

On the 23d day of April following complainant Broughton applied to the court for the appointment of a receiver to take charge of the railroad and its property of all kind, referring to the former proceedings and decrees in the cause, and further alleging that the Trust Company, after the decree mentioned had been

rendered, presented to the District Judge of the United States Court for the Northern District of Florida, sitting as a Circuit Judge, a bill wherein it prayed for the appointment of a receiver for such railroad. Certain statements of the agents of the company as to the appointment of a receiver are referred to, and copies of the bill and proceedings filed in the Federal Court are filed as exhibits. From the proceedings it appears that a receiver was appointed by the Federal Court on the 19th of March, 1894. Broughton's application was granted, and a receiver was appointed by the State court on the 25th day of April, 1894. Certain proceedings were had on application of holders of bonds against the railroad company for an extension of time in which to file same before the master, but no detailed statement of such proceedings becomes necessary in disposing of the questions now presented to the court. The special master appointed to take and state the accounts filed a report on April 6th, 1895. From this report it appears that Richard McLaughlin, agent for the estate of William Astor, J. N. C. Stockton, the National Bank of the State of Florida, the Kentucky National Bank, and J. M. Fetter, as holders of the first mortgage bonds of the railroad company, filed bonds before the master aggregating a large amount. Various individuals and copartnership firms including complainant Broughton and the other parties admitted as complainants, also filed claims against the railroad company before the master, and he allowed some of the claims and rejected others, and also settled the priority of liens or payments among the claimants whose claims were allowed. Many individuals and firms other than the three complainants mentioned had claims allowed. Such claims only were to be preferred

JUNE TERM, 1896.                145

J., M. & P. R. & N. Co., & M. T. Co. v. Broughton et al.—Statement.

to the bonds mentioned as were adjudged to have priority by virtue of the statute regulating liens of laborers and material-men, but several such claims besides those of the said complainants were allowed.  The railroad company filed exceptions, including objections made before the master, to the report filed, but no reference need be made to them as they have no material bearing upon the questions we are now to settle.

On May 11th, 1895, Charles F. Warriner, as surviving partner of Hungerford & Warriner, filed a petition of intervention setting forth that he as such surviving partner had in May, 1890, obtained a judgment against the said railroad company for $1,387.13, besides costs, and that the company prosecuted an appeal to the Supreme Court of Florida, where the judgment appealed from had recently been affirmed.  It was further alleged that petitioner's claim was a superior lien to all other claims except court costs, and he asked the right of having his claim allowed and paid by the receiver of the road.  The petition was allowed by the court to be filed, with leave given to parties to the record to demur, plead or answer the same, and in default thereof the allegations of the petition to be taken as confessed. The railroad company demurred to the petition, but the demurrer was overruled.

June 21st, 1895, the receiver filed a petition alleging, among other things, that he found the property of the railroad company in the possession of John L. Marvin, claiming to hold the same as receiver appointed by the United States District Judge, sitting as a Circuit Judge in the United States Circuit Court for the Northern District of Florida, in a certain cause brought by the Trust Company against the railroad company, and

10

146　　　　　SUPREME COURT.

J., M. & P. R. & N. Co., & M. T. Co. v. Broughton et al.—Statement.

that petitioner applied to the Federal Court for possession of the property; whereupon certain persons, claiming to be holders of the bonds of the railroad company, pretended to answer the application in their own names, as well as in the name of the said Mercantile Trust Company, and upon a hearing of the matter petitioner's application was denied by the court; that an appeal was prosecuted by petitioner to the Court of Appeals for the 5th Circuit, and the decision of the Circuit Court denying your petitioner's application was reversed. That thereafter petitioner presented to the said Circuit Court a mandate from the Court of Appeals, and again demanded possession of the property of said railroad company, and this demand was resisted by counsel for complainant in the said suit of the Trust company against the railroad company; that George Lewis, claiming to be a holder of receiver's certificates issued by the said John L. Marvin, sought to intervene and prevent the enforcement of said mandate, but a decree was finally entered in the said Federal Court in pursuance of the mandate of the Court of Appeals, ordering the restoration of the property of the railroad company to petitioner as receiver appointed by the State Circuit Court. This petition sets forth at length the various steps and proceedings taken and had on behalf of petitioner to obtain possession of the property, and asks for a reference to a master to ascertain the compensation to be allowed counsel for services rendered in that behalf.

Complainant Broughton also presented a petition asking for an allowance to be made to his solicitor for services rendered.

References were made on both applications to the special master to take testimony and report what sums should be allowed, and the reports made in pursuance of the orders were approved.

On the 21st of June, 1895, an order was made reciting that the petition of George Lewis to be allowed to intervene was argued, and upon consideration was denied. In this order it is also adjudged that certain exceptions taken by the railroad company and Mc-Donough & Co. to the report of the special master, filed on the 6th of April, 1895, be overruled, and that the first eight exceptions taken by M. V. Sullivan be overruled, and the exception for failure to allow his claim as a general creditor be sustained. It is also decreed that Sullivan's claim for $950 be allowed, the same to share in the residue of the proceeds of the property after the debts of all creditors adjudged to have liens are paid, and in all other particulars the report of the special master was confirmed.

On June 26th, 1895, an order was made on the petition of intervention of Charles F. Warriner, adjudging his claim to be a prior lien on the railroad property, except for costs and expenses of the litigation and such claims for labor and material as might be adjudged superior in equity, and that the receiver pay the same out of the first funds in his hands applicable for such purpose.

The railroad company filed a petition July 1st, 1895, asking that the matter of the allowance of certain bonds by the special master be referred back to him for further testimony, but this petition was denied.

On the 3d day of June an order was entered denying a petition of the railroad company asking that the receiver be discharged.

A decree was rendered on the 22d of July, 1895, directing a sale of the railroad, its rolling-stock, machinery and franchises, and that the special master appointed to take and state the account carry out the decree and make the sale.

On the 29th of the same month the State by counsel filed a petition asking to be allowed to intervene for the purpose of having paid certain taxes, alleged to be due from the railroad company to the State, and this petition was permitted to be filed with leave to all interested parties to plead, answer or demur to the same. The special master reported on the 6th of September following that he had sold the property as directed by the decree of sale, and that John N. C. Stockton was the highest and best bidder for the same; and on the 11th of the same month the sale was confirmed, and the master directed upon the payment of the bid to execute a deed to the purchaser. There was also a supplemental order on the 20th for the receiver, upon satisfactory information that the purchase price had been paid, to deliver possession of the property to the purchaser. These directions were carried out as appears by the report of the master filed on the 23d of September, 1895.

On the 20th of January, 1896, the railroad company entered the following appeal, after giving the style of the cause as Geo. F. Broughton *et al.* vs. Jacksonville, Mayport, Pablo Railway & Navigation Company *et al.*: "And now comes the Jacksonville, Mayport, Pablo Railway & Navigation Company, and in the name of all the defendants hereto takes and enters its appeal to the June term of the Supreme Court of Florida, to be holden on the 9th day of June, 1896, from the order and decree of the court herein rendered on the

22d day of July, A. D. 1895, interlocutory decrees therein, and prays citation as is usual in such cases." On the same day the following other entry of appeal is found, after styling the case as George F. Broughton *et al.* vs. the Jacksonville, Mayport, Pablo Railway & Navigation Company, and Mercantile Trust Company, *viz:* "Comes now the defendant, the Mercantile Trust Company, and William J. Kendrick, and James A. Russell, who are holders of a portion of the bonds mentioned and referred to in the complainant's bill of complaint, and secured by the bond of trust mentioned and described in the said complainant, and, being aggrieved by the decree of said Circuit Court, signed on the 22d day of July, A. D. 1895, and the several interlocutory decrees of the said court in this cause, the said Kendrick and Russell in their own right, as well as in the name and right of the said Mercantile Trust Company, and the said Trust Company, appeal from the said decree of July 22d, 1895, and from said interlocutory decrees, to the Supreme Court of Florida, at its term to be held on the second Tuesday of June, A. D. 1896, at Tallahassee, Florida."

On the 30th of January, 1896, the railroad company, the Mercantile Trust Company, William J. Kendrick and James A. Russell filed assignments of errors and written directions to the clerk as to making up the transcript; the assignment and written direction filed by the railroad company being separate from those jointly filed by the Trust Company, Kendrick and Russell. Counsel for John N. C. Stockton filed, on the 13th of February, 1896, additional directions to the clerk as to making the transcript, and the transcript as made up under the directions given was filed in this court on the first day of the present term. On June

8th, 1896, counsel for Broughton, Hathorne, Fairhead, Strawn & Co., Warriner & Co., John N. C. Stockton, and the railroad company receipted the. Mercantile Trust Company for a certified copy of the transcript of the record, and also a copy of its abstract of the record.

The foregoing statement does not contain all of the proceedings in the case, but sufficient is given to show the status of the case.

Motions are made to dismiss the the appeal on various grounds, which will be stated in the opinion.

*A. W. Cockrell & Son, W. B. Young* and *W.. H. Baker*, for Motions.

*Bisbee & Rinehart, Henderson & Raney, Contra.*

MABRY, C. J.:

George F. Broughton, J. N. C. Stockton and C. F. Warriner have filed two motions to dismiss the appeals entered in this cause, one directed to the appeal entered by the Railway & Navigation Company, and the other to the appeal entered by the Trust Company, Kendrick and Russell. Application has been made on behalf of Kendrick and Russell to dismiss the appeal as to them, and the granting of this application, which is done, disposes of all questions as to the appeal in their names.

The first three grounds of the motion directed to the appeal entered by the Railway Company are substantially that the entry is by said company in the name of all the defendants, and no other name than that of the company appears in the entry; it does not appear that all the defendants were not willing and

ready to join in the appeal, or that said defendants had no opportunity of joining in the appeal for the protection of their rights. In the appeal entered by the Railway Company the style of the case is given as Geo. F. Broughton, *et al.* vs. Jacksonville, Mayport, Pablo Railway & Navigation Company *et al.*, and the recital is, "now comes the Jacksonville, Mayport, Pablo Railway & Navigation Company, and in the name of all the defendants hereto takes and enters its appeal," etc. The only parties defendant to the action, as shown by the record, were the Railway & Navigation Company and the Mercantile Trust Company, and the latter, on the same day, and at the same time for aught we know, that the former appealed, also entered an appeal. We are satisfied that the decrees rendered in the present case are not so joint either in form or substance against the defendants as to demand a joint appeal on their part. The decree is against the Railway Company for a sale of its property to pay certain sums adjudged to be due from it, but there is no money demand or liability of any kind adjudged against the Trust Company. The allegation in the bill is, that it was the trustee of certain mortgage bonds, but subordinate in right of payment to other lien claims. The decision in the case of Guarantee Trust & Safe Deposit Co. vs. Buddington, 23 Fla. 514, 2 South. Rep. 885, sustains the view we take, rather than that contended for on behalf of the moveants. The rule as there stated does not preclude any one party who may be aggrieved by a decree in his separate interest, or several parties who may be aggrieved as to their united interests, from taking, the former his individual appeal, and the latter their joint appeal, although there may be numerous other parties ad-

judged against by the same decree, but not united in interest with such individual or joint parties in the matter so decreed as to him or them. There are two separate appeals in the record before us, and the one entered by the Railway Company is sufficient so far as an appeal on its own behalf is concerned.

The fourth ground is, that no assignment of errors was filed in the clerk's office within the time required by law, "nor otherwise than in and by the said J., M. & P. Railway & Navigation Company alone. The appeal was entered on the 20th of January, 1896, and on the 30th of the same month assignments of errors were filed both by the Railway Company and the Trust Company, setting up the alleged grounds of error upon which they severally relied. The assignments of error were filed in the proper clerk's office within the time prescribed by Special Rule 4, regulating appeals in chancery, that is, within ten days after the appeal was entered. Crawford vs. Feder, 27 Fla. 523, 8 South. Rep. 642. It is contended in the brief that the fourth ground to dismiss is, that no assignment of errors was filed within time by appellants except by the Railway Company. As a matter of fact assignments of errors were filed by both appellants on the same day. We do not understand the contention to be that the assignment of errors is fatally defective because not jointly made, but if such be the purpose of this ground of the motion, it is not good. The rules do not prevent a severance as to assignments of errors by appellants in perfecting an appeal to this court.

The fifth ground of the motion is, that citations have not been issued, served and returned in the cause. In support of this ground of the motion counsel cite

the provisions of our statutes relating to the issuance and service of citations, and decisions in this court showing the necessity of the same when not waived. We have before us an original citation issued by the Clerk of the Circuit Court on the 11th day of February, 1896, notifying George F. Broughton, John N. C. Stockton, John S. Fairhead, Henry C. Strawn and B. R. Powell, partner as Fairhead, Strawn & Co., Joseph Hathorne and the Mercantile Trust Company, that the Railway Company and the Trust Company had taken an appeal from the decrees and orders of the Circuit Court, bearing date the 22nd of July, 1895, and other dates shown by the record, to the Supreme Court, to be heard on the second Tuesday in June, 1896, and they were cited to show cause why said decrees and orders should not be reversed. This citation was served on all the parties named in person except the Trust Company and Joseph Hathorne, and as to them upon their respective attorneys, more than twenty-five days before the first day of the present June term of the court. The ground of the motion is, that no citation had been issued, served and returned in the cause, and no defect either as to the issuance or service of the citation mentioned is pointed out in the motion or brief. Confining ourselves to the specific objection made, the conclusion is that this ground of the motion is not sustained.

The only other ground of this motion requiring consideration is, that no copy of the record or abstract of the record, accompanied by an assignment of errors, as required by the rules of this court, has been served on the moveants by appellants. There is here on file in the cause a joint receipt signed by counsel for all the moveants, as follows, after giving the style of the

case as the Mercantile Trust Company, and the Jacksonville, Mayport, Pablo Railway & Navigation Company, appellants, vs. George F. Broughton *et al.*, appellees, *viz:* "Received of Bisbee & Rinehart, of counsel for appellant, Mercantile Trust Company, in the above entitled cause, certified copy of the transcript of the record therein, and also copy of the appellants' abstract of record, this June 8th, 1896." From this receipt, the correctness of which is not questioned here, it appears that a certified copy of the record in the cause, containing all the assignments of errors filed in the Circuit Court, was jointly accepted by counsel for appellees within the time prescribed by Supreme Court Rule 12, the one bearing on the subject, but this copy, as is shown, was served not by the Railway Company, but the Trust Company. The rule provides that "the plaintiff in error or appellant shall file in the Supreme Court at the time required by law a duly certified transcript of the record clearly and legibly type-written or printed in black ink, and within the same time shall serve the opposite party or his attorney with a type-written or printed copy thereof, preserving in said copy the pages and order in the transcript." The entire proceedings in the Circuit Court were in one and the same cause, and there is in fact but one transcript of the record before us. This transcript was made up under all the directions given to the clerk, and the question is presented whether it is necessary when there are two or more appellants assigning errors and giving directions as to making up a joint transcript for each one to serve a copy of the transcript on the opposite party or his attorneys. No useful purpose can be subserved in such a case by insisting on such a requirement, as one copy served by

any one of the appellants will answer all the objects that a dozen or more could serve. Neither the letter nor the spirit of the rule demands such a construction, and we hold that a certified copy of the transcript of the record served by one plaintiff in error or appellant, where there are more than one, on the opposite party or his attorney meets the requirement as to serving a copy of the transcript on the opposite party. We deem it proper to say that the terms "opposite party or his attorney," in connection with the requirement as to serving a copy of the transcript, implies all opposite parties or their attorneys. The obvious purpose of the requirement as to serving a copy of the transcript indicates that such is the meaning of the rule. If there are two or more defendants in error or appellees represented by different attorneys, each party or his attorney must be served with a copy of the transcript, unless waived; but if two or more of them, or all of them, are represented by the same attorney, service of one copy on such attorney will be sufficient for all the parties whom he represents. There is no objection here that a copy of the transcript was not served on each one of the moveants; but the point is, that the Railway Company did not serve a copy on them. The receipt of the copy delivered by the co-appellant Trust Company is joint, and signed by counsel for all of the moveants.

It is conceded by the Railway Company that no copy of the abstract of the transcript has been served by it, and application is made along with this motion for leave to prepare and file copies as required by the rule. The reasons assigned to the court for a failure to prepare and serve the abstract are deemed sufficient to authorize it to be now done; and counsel will have

twenty days in which to file four copies of the abstract of the record as required by the rule in this court, and to properly serve copies on opposite parties.

The fourth ground of the motion to dismiss the appeal as to the Mercantile Trust Company on account of the joinder in the appeal of Kendrick and Russell is disposed of by the dismissal as to them.

The first and fifth grounds—that no abstract of the record had been served upon either of the appellees, and no assignment of errors was filed in the clerk's office where the appeal was entered within the time required by the rules of this court—are without foundation in fact. The evidence before us shows that an abstract of the record was served by the Trust Company within the time required, and from the transcript it appears that an assignment of errors was duly filed in the proper clerk's office.

The second ground of the motion is, that no citation was issued, served and returned in the cause within the time required by law. There is on file here an original citation issued by the Clerk of the Circuit Court on the 11th day of February, 1896, notifying George F. Broughton, John N. C. Stockton, Joseph Hathorne, Charles F. Warriner, surviving partner of Hungerford & Warriner, John S. Fairhead, Henry C. Strawn and Benjamin R. Powell, partners under the firm name of Fairhead, Strawn & Co., and the Jacksonville, Mayport, Pablo Railway & Navigation Company, that the Mercantile Trust Company, William J. Kendrick and James A. Russell had taken an appeal from the judgments, orders and decrees of the Circuit Court, bearing date July 22d, 1895, as well as from all interlocutory orders made in the cause, to the June term, 1896, of the court, to be held on the second

Tuesday of the month. This citation was personally served on all the parties named except Joseph Hathorne, and as to him the service was on his attorney. What is said as to the fifth ground of the motion to dismiss the appeal entered by the Railway Company is applicable here, and need not be repeated.

The third ground of the motion needs no discussion, as what has been said in relation to the appeals by the parties disposes of it.

The sixth and only remaining ground of the motion is, that the appeal was entered and taken more than six months after the entry of the final decree against the Trust Company. On the 17th of November, 1893, a decree *pro confesso* was entered against the Trust Company, and on the 6th of March, 1894, it was decreed on the report of testimony by the master that complainant have the relief prayed in his bill, and the cause was referred to the master to take and state an account of what was due complainant and any other creditor of the Railway Company who would come in and prove his claim. It was further ordered that the master report to the court the order in which the claims, which he found due from said company to the several creditors, were entitled to share in the proceeds of the sale of the property of the company. The master reported on the 6th of April, 1895, various claims as due from the company as lien demands and first mortgage bonds, and also settled the priority of liens and claims allowed. This report, with some modification, was confirmed on the 21st of June, 1895, and on the 22d of the following month a decree was rendered ordering a sale of the railroad, its rolling-stock, machinery and franchises to pay the claims reported by the master and allowed by the court. There

were other orders made in the cause subsequent to the
order of sale mentioned.   The contention is that the
decrees of November 17th, 1893, and March 6th, 1894,
were final as to the Mercantile Trust Company, and
that its right of appeal was barred, the statutory limit
of six months from the entry of said appeal having
expired before the entry thereof.   Counsel assume the
position that under our present statutory regulations
as to appeals in chancery, no interlocutory decree en-
tered in a cause can be reviewed unless an appeal be
taken therefrom within six months from the entry
thereof.   The last regulation on the subject is the act
of 1893, Chapter 4130, entitled "An act to limit the
time within which appeals in chancery may be taken,"
and providing that "all appeals in chancery, whether
from final decrees or from interlocutory orders or de-
crees, must be taken within six months after the
entry of the final decree, or of the entry of the inter-
locutory order or decree appealed from."   In construing
this statute we should keep in mind the prior legislation
on the subject.   It was held in Bellamy vs. Bellamy, 4
Fla. 242, decided in 1851, that under the statute regu-
lating appeals in chancery in force at that time an ap-
peal could be taken only from a final judgment, sen-
tence or decree.   In 1852 an act was passed providing
"that appeals may be taken and prosecuted from any
interlocutory order, decision, judgment or decree of
the Circuit Court of this State when sitting as courts
of equity," with a proviso as to when and the condi-
tions upon which such appeals should operate as su-
persedeases.   It was also provided "that this act shall
not be construed so as to deprive either party from
deferring and postponing the entry of his, her or their
appeal until after the entry of the final decree, or end

of the cause, as now prescribed by law, nor shall such postponement of the appeal be decreed, held or taken as an acquiescence in the propriety of any interlocutory order or decree made in the progress of the cause, or any waiver of any error therein." The purpose of the act is expressed in a preamble to the section. It is said by this court in State vs. Johnson, 13 Fla. 33, 41: "The preamble to the section explains the reason of the enactment. It often happened that an interlocutory decree or order made important changes in the relation of parties and their property, and gave occasion for delay, and often of great expense, which decree or order may have been erroneous, whereby after years of litigation, a final decree may have been set aside by the appellate court. · The object of this statute of 1852 was to give parties a means of correcting such errors without the great sacrifices and inconveniences arising from the postponement of an appeal until a final decree." The act of 1852, found on pages 167 and 168, secs. 2 and 3 of McClellan's Digest, continued the law on the subject until the Revised Statutes went into effect in June, 1892. Section 1457 of the Revision provides that "appeals may be taken and prosecuted from any interlocutory order, decision, judgment or decree of the Circuit Courts of this State, when sitting as courts of equity; but the conferring of this right shall not be construed so as to deprive either party from deferring and postponing the entry of his appeal until after the entry of the final decree, or end of the cause, as prescribed by law; nor shall such postponement of the appeal be deemed, held or taken to be an acquiescence in the propriety of any interlocutory order or decree made in the progress of the cause, or any waiver of any error therein. Such

appeal may be taken within two years after the entry of the order or decree appealed from." This provision is substantially the same as that contained in the act of 1852, with the addition of the limitation of two years within which to enter an appeal from the interlocutory order or decree appealed from. It was the rule of this court, both before and subsequent to the act of 1852, that an appeal from the final decree opens for consideration all prior interlocutory orders or decrees connected with the merits of the final appeal. Le Baron vs. Fauntleroy, 2 Fla. 276; Hyer's Executors vs. Caro's Executrix, 17 Fla. 332. The purpose of the legislation as to chancery appeals from interlocutory orders or decrees prior to the act of 1893 was, we think, to provide for separate appeals from such orders or decrees before the final decree, or end of the cause, without interfering with the right to have all prior interlocutory orders or decrees from which no appeal had been taken opened for consideration on an appeal from the final decree when connected with the merits thereof. Such is unquestionably the correct view under the regulations prior to the addition of the limitation of time in which such appeals could be taken, and found in the Revised Statutes, and along with that addition it is expressly provided that the right to such appeal shall not deprive a party of the privilege of postponing the entry thereof until after the final decree is entered as prescribed by law, nor shall postponement be held as an acquiescence in the propriety of any interlocutory order or decree made in the progress of the cause, or a waiver of any error therein. Under this provision a party had the right to a separate appeal from an interlocutory order or decree at any time within two years from the entry thereof, without wait-

ing for the final decree, but if no appeal was entered from an interlocutory order, it was still subject to review on the appeal from the subsequent final decree if connected with the merits thereof. The act of 1893 was not designed to change this rule in any respect except to limit the time in which both characters of appeals may be taken. Two years was allowed for appeals from final decrees under the Revised Statutes, and as the time for suing out writs of error from judgments in civil actions had been limited to six months from the date thereof, the purpose of the Legislature was to place a like limitation upon separate appeals in chancery, whether from final or interlocutory decrees.

The object of the present motion is to dismiss the appeal entered by the Mercantile Trust Company, because it was entered more than six months after the final decree was rendered against it. The first decree appealed from in the entry made is the one entered on the 22d day of July, 1895, within six months from the entry of the appeal, and then follows an entry from all the interlocutory decrees in the cause. We do not propose on this motion to go into a consideration of what was the final decree in the cause, or the characteristics of a final decree. It was clearly the purpose of the act of 1893 to limit an appeal from a final decree to six months, and it may be conceded that a party has no right to assign errors on a decree from which he has no right to appeal, and that if such assignments are made the opposite party has the right to move to dismiss them, or object to their consideration in this court. Without considering the right of the Trust Company to assign errors on decrees or orders made prior to July 22d, 1895, it is evident that

there is no bar of an appeal from the decree of that date and the orders subsequently made, and it would be clearly improper to dismiss the appeal on the ground stated. It is not questioned that an appeal in chancery can be taken from a decree rendered upon a decree *pro confesso* with limitations as to what is open for consideration under such an appeal. Hart vs. Stribling, 21 Fla. 136; Garvin vs. Watkins, 29 Fla. 151, 10 South. Rep. 818.

An order will be entered denying the motions.