WILLIAMS V. WELLS.

1. **Practice in Supreme Court**: TRIAL DE NOVO UPON AGREED STATE-MENT OF FACTS. Where by the agreement of the parties the facts in an equity cause are reduced to a statement in writing, such statement takes the place of the depositions or the oral testimony reduced to writing, as contemplated in section 2742 of the Code, and a cause tried in the court below upon such a statement is triable *de novo* in this court.

2. **Partition**: APPEAL FROM DECREE IN: AT WHAT POINT IN THE PROCEEDINGS TO BE TAKEN. A decree in an action for the partition of real estate, settling the shares and interests of the parties, is in effect final as to those shares and interests, and from such a decree an appeal will lie; and it is the better practice, to say the least, to take an appeal at that point in the proceedings, rather than to wait until after the approval and confirmation of the report of the commissioners, whose only duty it is to divide the land or proceeds in accordance with the terms of that decree.

3. **Fraud**: SALE OF LAND BY AGENT: CONCEALMENT OF ADVERSE INTEREST: AGENT CANNOT PROFIT BY: ESTOPPEL. Where plaintiff's father was the owner of certain real estate, and had long lived apart from his wife, (who was an inmate of an insane asylum in a distant state,) and had married another woman, by whom he had several children, and from whom, after many years of cohabitation, he had been divorced; and defendant, knowing the facts concerning the second pretended wife, but knowing nothing of the existence of the first and real wife, (who was also plaintiff's mother,) but believing her to be dead, was induced by plaintiff, acting as his father's agent, to purchase of his father the land in question, accepting a deed therefor in which plaintiff's mother, who was still living, did not join:--*held* that, in the absence of evidence to the contrary, the law will presume that plaintiff knew that his mother was living, and that she had an interest in the land; that his participation in the sale of the land and his concealment of his mother's interest was a fraud upon defendant, and that, after the death of his father and the subsequent death of his mother, he could not, as the heir of his mother, claim, as against the defendant, an interest in the real estate.

*Appeal from Lee District Court.*

WEDNESDAY, SEPTEMBER 19, 1883.

ACTION in chancery to partition certain real estate, being parts of two lots in the city of Keokuk. The plaintiff claims to be the owner of the undivided one-third of the property,

and alleges in his petition that the defendant owns the undivided two-thirds. The defendant denies the interest and claims set up by plaintiff, and alleges that he holds the title to the whole property. Upon a trial on the merits, the district court entered a decree confirming the title in plaintiff to the undivided one-third of the property, and appointing commissioners to make partition thereof and report their proceedings as required by statute. Defendant appeals.

*Anderson Bros. & Davis*, for appellant.

*Hagerman, McCrary & Hagerman*, for appellee.

BECK, J.—I. The petition alleges that plaintiff is the only child and heir of Catharine and B. A. Williams; that his mother died in 1876, and his father in 1872; that the father owned the property in controversy, and in 1872 conveyed it to defendant; that the mother did not join in the deed, or make any relinquishment of her dower interest in the real estate, and that, upon the death of the father, plaintiff's mother became seized of the undivided one-third of the property, which, upon her death, descended to plaintiff. The answer alleges that the property was conveyed to defendant in exchange for other property in the city of Keokuk, of equal value, deeded by defendant to B. A. Williams in his life time. The defendant made further allegations in his answer in the following language:

"That defendant did not know of the existence of Catharine Williams, but in good faith supposed said B. A. Williams to be unmarried, having been shortly before divorced from Margaret E. Williams, whom defendant in good faith supposed to have been the wife of said B. A. Williams; that plaintiff knew of the existence of said Catharine Williams and of her rights (if any) in and to the property in controversy, yet, so knowing, he concealed the existence of said Catharine Williams from the defendant, and, by his conduct, induced and allowed the defendant to make the exchange as

aforesaid, and defendant, relying upon the supposed fact that said B. A. Williams was unmarried, made the exchange of property aforesaid, and parted with his property upon the faith of such supposed fact."

It is further alleged that, after the death of B. A. Williams, plaintiff, as heir, took possession of the property deeded by defendant to his father, and afterwards sold and conveyed it by deed of warranty. The plaintiff in reply admits the trade and conveyance between defendant and his father. He alleges that he had no connection with the trade, except as the agent of his father, and had no knowledge of the existence of his mother at the time, and acted in good faith, and denies that defendant was induced by his conduct or representations to make the conveyance to his father, or relied upon them. Other allegations of the pleadings need not be here recited. The case was submitted and tried upon an agreed statement of facts set out in a stipulation, which is in the following language:

"For the purpose of abridging the testimony herein, it is agreed:

"1. That B. A. Williams and Catharine Williams were legally married in the state of New York, on or about September 16, 1831; that they lived and cohabited together as husband and wife until on or about the      day of      , 1840, during which time Horace Williams, the plaintiff in this action, was born of said parents, and that the plaintiff is the only surviving child of said Catharine Williams.

"2. That B. A. Williams, father of the plaintiff, died in Keokuk, Iowa, on or about the 31st day of December, 1872, and that Catharine Williams, mother of the plaintiff, died intestate in an insane asylum in Onondaga county, New York, on or about the 25th day of December, 1876.

"Catharine Williams never deeded, released or devised any interest she may have had in the property in question in this case, either before or after her husband's death. It is not admitted that she had any interest, except in so far as the facts may tend to establish an interest, if any.

" 3. That Catharine Williams, about the     day of     ,
1840, became insane, and was placed in an insane asylum in
Onondaga county, N. Y., where she remained an insane
woman continually until the day of her death, on December
25, 1876.

" 4. That B. A. Williams removed to the west about 1842,
with a woman with whom he lived and cohabited, claiming
to be husband and wife, until shortly before the 31st day of
November, 1846, when she procured a decree of divorce from
him in the district court of Lee county, Iowa, at Ft. Madison,
a copy of which decree is hereunto attached, marked Exhibit
A, and made part hereof.

" 5. That afterwards, to-wit, on or about the 6th day of May,
1849, the said B. A. Williams and Margaret E. Steele had a
ceremony of marriage performed at Keokuk, Iowa, and from
that time until about 1872 they, the said B. A. Williams and the
said Margaret E. Williams (formerly Steele) lived and co-
habitated together, claiming to be husband and wife, and
were recognized by the community in Keokuk, Iowa. That
several children were born to them. That, for about ten
years after their marriage, plaintiff lived with his father, the
said B..A. Williams, and the said Margaret E. Williams, as
one of the family. That said B. A. Williams, while said Mar-
garet E. Williams lived with him, treated and held her out to the
world as his wife, that she joined in several deeds with B. A.
Williams, as his wife, releasing dower therein to their grant-
ees; that two or three deeds for real estate were thus made to
the plaintiff from B. A. Williams and Margaret E. Williams,
aforesaid, and that, while plaintiff lived with his father, he
recognized and treated the said Margaret E. Williams as the
wife of his father.

" 6. That on or about the 1st day of October, 1872, the said
Margaret E. Williams obtained a decree of divorce from the
bonds of matrimony against the said B. A. Williams, and
about $10,000 alimony from the said B. A. Williams, in the
district court of Lee county, Iowa, at Keokuk. A copy of

which decree is hereto attached, marked Exhibit B, and ·made part hereof.

"7. That prior to November 13, 1872, B. A. Williams was the owner in fee simple of the property in controversy.

"8. That on the 13th day of November, 1872, the said B. A. Williams exchanged the said property in controversy with Guy Wells for the northeast one-half of lot 6, block 5, in the city of Keokuk, and, in pursuance of such contract for the exchange of said pieces of property, the said B. A. Williams made, executed and delivered a warranty deed, conveying the property in controversy to Guy Wells, naming the consideration therein $5,000, and Guy Wells made, executed and delivered a warranty deed, conveying the northeast one-half of lot 6, in block 5, in the city of Keokuk aforesaid, to the said B. A. Williams, also naming the consideration of $5,000.

"9. On the 24th day of March, 1877, Horace Williams made, executed and delivered to Sarah E. Williams, his wife, a warranty deed, conveying to her the northeast one-half of lot 6, in block 5, aforesaid, and on the 23d day of January, the said Sarah E. Williams and Horace Williams, her husband, made, executed and delivered a quit claim deed, conveying the said northeast one-half of lot 6, block 5, aforesaid, to John H. Craig, Wm. Collier, M. A. Ballinger and Sarah J. Gelatt.

"The foregoing admissions and agreement are made subject to objections by either party on account of immateriality or irrelevancy.

"10. The defendant, Wells, at the time of making the trade of said pieces of real estate, did not know anything about the marriage of Catharine Williams, mother of the plaintiff, with the said B. A. Williams, nor did he know anything of the existence and continued life of said Catharine Williams, but at the time of said trade in good faith supposed that B. A. Williams had no wife, and also in good faith supposed that he was getting the entire title of said real estate described in the petition. The plaintiff took part in the negotiations of said trade as agent of B. A. Williams, and, as such agent, signed

a contract with said defendant in the name of B. A. Williams, by himself as agent, which he was authorized to do, a copy of which contract is attached hereto as part hereof—Exhibit C, and it is admitted that the defect of title, or cloud, mentioned in said agreement, referred to the absence of any evidence of record of a deed from Wm. Armstrong to Joel Hargrove, shown in the abstract attached to petition in this case."

The exhibit C, referred to in the tenth paragraph of the statement of facts, is a contract executed December 31, 1872, by B. A. Williams, by his agent, Horace Williams, plaintiff, and the defendant, which provides that Williams shall at his own expense prosecute a suit to quiet the title of the property involved in this action. Certain stipulations concerning rent, taxes and other matters are also found in the contract. They need be no more particularly referred to in this opinion. The exhibits A and B mentioned in the stipulation are sufficiently understood, without reciting any part of their contents. It will be observed that the conveyance by B. A. Williams to defendant was executed November 13, 1872. The contract, exhibit C, was entered into December 31, 1872, and Williams died on that day.

Upon the agreed statement of facts, and the documents therein referred to as exhibits, the district court found that the title to the undivided one-third of the lot conveyed to defendant by B. A. Williams is in plaintiff, and confirmed the same in him, and appointed commissioners to make partition of the property and report the action to the court.

II. Before reaching the merits of the case, two preliminary questions arise, which we are required first to consider. The plaintiff insists that, as the case was tried in the court below upon an agreed statement of facts, it is not triable *de novo* in this court. The statute provides that in chancery actions the evidence offered at the trial shall be taken down in writing, or that the evidence shall be taken in the form of depositions, upon the order of the court, or upon the election of the parties. The

1. PRACTICE in supreme court: trial de novo on agreed statement of facts.

evidence thus reduced to writing is certified to this court upon appeal, whereon the case is tried anew. Code, § 2742 Counsel insist that the evidence in this case was not taken down in writing or in the form of depositions and certified by the judge of the district court, and that a trial *de novo* cannot, therefore, be had in this court.

The agreed statement of facts takes the place of evidence. It is, indeed, the evidence upon which the case was tried. The facts of a case are brought to the knowledge of a court by evidence, which may be in different forms, as oral testimony, or testimony in the form of depositions, or in the form of documents. Where by the agreement of the parties the facts are reduced to a statement in writing, it takes the place of depositions, or of the oral testimony reduced to writing. The statement thus becomes the evidence in the case. The object of the agreed statement is to dispense with depositions or oral testimony upon the trial. By so presenting the testimony, the parties avoid cost and delay, and are enabled to present to the court the facts in a clearer and briefer form, thus expediting and making more certain the administration of justice. Now, it surely cannot be the purpose of Code, § 2742, to prevent or discourage the trial of actions in this manner. In providing that actions shall be tried upon oral evidence reduced to writing at the trial, or upon depositions, it cannot be held that a method of introducing the evidence agreed upon by the parties by a written statement shall not be regarded as a substitute of other methods which shall take their place. The agreed statement is, therefore, to be regarded as depositions or oral testimony reduced to writing. It secures to the parties the same rights of a trial *de novo* as they would have, had it not been selected to take the place of the other forms of evidence. A contrary rule would impose expense upon litigants which they are willing to avoid by agreement, and would delay proceedings in the courts. We do not hesitate to say that the statute contemplates the practice, which has always prevailed, of submitting facts upon agreed

statements, and intends that cases so tried shall take the course of actions wherein the testimony is introduced in another form. The amended abstract filed by plaintiff shows that the agreed statement was duly certified by the judge trying the case to be all the evidence heard at the trial. The case, in our opinion, is triable here *de novo*.

III. Counsel for plaintiff insist that the appeal in this case is not triable *de novo*, for the reason that the judgment appealed from is not final. Under the statute, the rights of the parties in partition cases are determined, and their respective interests in the land are settled, by a decree. Such a decree was rendered in this case, and from it this appeal is prosecuted. Commissioners are appointed to make partition of the land, and, upon their report being approved, the shares are confirmed to the parties as awarded by the report. See Code, §§ 3289, 3296. It will be observed that the decree settling the rights and interests of the parties to the land is in effect final, so far as to settle the rights of the parties. Subsequent orders and decrees are supplementary in character, and are intended to effectuate the remedy provided by the law, to the end that the land may be partitioned between the holders of the title according to their respective interests. These supplementary proceedings, indeed, pertain to the enforcement of the final judgment determining the rights of the parties. While, doubtless, they may be reviewed by appeal, an appeal will lie from the final decree settling the interests of the parties—the decree appealed from in this case. Indeed, it appears that the interests of the parties in the land ought to be settled before the partition is made by the commissioners. In case of a reversal or modification of the decree settling the parties' interests, after the report of the commissioners and its confirmation by the court, the case would be again sent to the commissioners, thus requiring their action twice. So, as in this case, if it be held on appeal that partition ought not to be made for any reason, as that the title to all the land is in one

*[margin note: 2. PARTITION: appeal from decree in: at what point to be taken.]*

party, this should be determined before the commissioners make the partition, thus saving costs and expenses. We are not to be understood as holding that, upon an appeal taken after the confirmation of the commissioners' report, the final decree settling the interests of the parties in the land. cannot be reviewed upon a trial *de novo*. We simply hold that an appeal may be prosecuted from such decree before subsequent proceedings are had, and that this course is the better practice. We find no case ruled by this court inconsistent with our conclusions.

IV. We are now brought to the consideration of the merits of the case, being required to determine whether plaintiff holds an interest in the real estate in controversy, which he can enforce against the defendant. Counsel have argued, at considerable length and with great care, questions involving the effect of the decrees divorcing B. A. Williams from the woman with whom he cohabited subsequent to his separation from plaintiff's mother, the effect of the exchange of property by him and defendant, the effect of plaintiff's conveyance of the property after the death of his father, the effect of B. A. Williams' warranty deed, the doctrines of lineal warranty and rebutter, and the doctrine of estoppel, as applicable to preclude plaintiff from setting up any interest in the land in conflict with the title conveyed by the warranty deed executed by his father to defendant. These_ questions involve interesting and important legal principles. We think their solution is not necessary for the correct disposition of· the case, which, we think, ought to be based upon an estoppel arising from the conduct of plaintiff, and the relations he sustained to B. A. Williams and defendant. We will, in this connection, repeat some of the facts of the case, which will aid a clearer understanding of the principles upon which our conclusion is based.

The plaintiff, as agent of his father, "took a part" in the negotiations which resulted in defendant's purchase of the

*[margin note:]* 3. FRAUD: sale of land by agent: concealment of adverse interest: agent cannot profit by: estoppel.

land and the conveyance by B. A. Williams by a warranty deed. The law will presume that defendant bought the property believing and understanding that it was free of any dower claim, and that Williams had no living wife, who, upon his death, would be entitled to dower in the land. Williams, by selling the land and warranting the title, represented that defendant would acquire a title subject to no such infirmity. The plaintiff, as agent, by his acts and conduct, represented the same thing. The law will not permit an agent thus by his conduct to induce the purchase of lands, and afterwards to set up a title which he induced the purchaser to believe did not exist. The agent by his fraudulent representations is forever estopped to deny the title he induced the purchaser to accept. The equity and good morals of the rule are obvious. Suppose plaintiff, while making the negotiations for the sale of the property, had informed defendant that B. A. Williams had a living wife, the plaintiff's mother:—the trade would have fallen. The law will presume that defendant would not have accepted a title encumbered with a possible dower interest. Plaintiff, as agent of his father, was bound to the same degree of honest and fair dealing which the law imposed upon his principal, his father. His concealment or silence was a gross fraud, of which the law will permit him to reap no advantage. Defendant was induced to make the trade by the silence of plaintiff and his father; for, as we have said, he would not have made it had the truth been imparted to him.

The law will presume that plaintiff knew of the existence of his mother, and of her rights as a wife in the property. While he alleges in his answer that he was ignorant of her existence, there is not one word of testimony supporting this allegation. It is possible that a man may not know that he has a mother living; but usually men know whether their mothers be dead or living, and, as a rule, all men, while their mothers are living, know that fact. The law, in the absence of proof, will presume in accord with the general rule, and

not with an exception, which is a bare possibility. The law will, therefore, presume that plaintiff knew, when he negotiated the sale to defendant, that the wife of B. A. Williams, plaintiff's father and principal, was living. It will presume, further, that plaintiff knew the provisions of the law securing to her dower rights.

We have, then, the case of fraudulent conduct of plaintiff, whereby he represented that B. A. Williams' deed would convey the title of the land free from any dower interest; the knowledge of plaintiff that the title was burdened by the interest of a living wife of the grantor, and the fact that defendant was induced to make the purchase by the conduct of plaintiff. It further appears that defendant was ignorant of the existence of the wife of B. A. Williams, and the law will presume that plaintiff intended by his conduct to induce defendant to purchase the property. This conduct, of course, as all acts of men, was prompted by a purpose. In the absence of any proof of the purpose, the law will presume that it was connected with the business in which it arose, and that plaintiff's concealment and silence were intended to induce defendant to purchase the property. We find in the case, as the foregoing considerations clearly show, all the elements of an estoppel based upon conduct. See Bigelow on Estoppel, p. 480. We reach the conclusion that the court below ought to have entered a decree settling the title of the property in defendant, and declaring that plaintiff is forever estopped to set up any claim or title thereto as heir, either of B. A. Williams or of his mother, Catharine Williams. The decree of the district court is reversed, and the cause is remanded for a decree in harmony with this opinion.

REVERSED.