CAMP PHOSPHATE COMPANY, A CORPORATION, *Appellant*, v. HERBERT L. ANDERSON, AS TRUSTEE, AND ROBERT L. ANDERSON, *Appellees*.

1. A decree in a partition suit adjudicating the rights and interests of the respective parties in the lands sought to be partitioned, ordering partition thereof and appointing· commissioners to make the same is interlocutory merely, and not final; but a decree in such a suit ordering a sale of the property by the commissioners based upon their report that partition can not be made without great prejudice to the owners of the lands, is final.

2. Where several interlocutory orders or decrees are made in a cause, and only certain ones specified are appealed from, assignments of error based upon those not appealed from can not be considered, but upon appeal from a final decree errors may be assigned upon interlocutory decrees, though not embraced in the entry of appeal.

3. An allegation in a bill for partition that "according to the best knowledge and belief of your orator the name and place of residence of" a defendant named in the bill as a corporation "is as follows: Camp Phosphate Company, which is a Florida · corporation," is a sufficient compliance with the provisions of section 1492, Rev. Stats. of 1892, requiring the bill to state the "name and place of residence" of such defendant, "according to the best of the knowledge and belief of complainant."

4. In equity the chancellor has power to allow necessary parties complainant or defendant to be made at any time before the final decree is entered.

5. A bill for partition alleging that the land sought to be partitioned was conveyed by patent from the United States to a named person; that such person subsequently died leaving certain named heirs at law who inherited the property; that certain of those heirs conveyed their interests by deed to complainant, and others conveyed their interests by deed to the defendant; that complainant and defendant are in possession of several portions of the land, claiming title by virtue of the deeds from the heirs, and which sets forth the quantity or proportionate shares held by the complainant and the defendant, and facts from which the court can see as a matter of law that the parties are tenants in common, states a case entitling complainant to partition, and is not demurrable.

6. Where the complainant and the defendant in partition both claim title to undivided interests in the property sought to be partitioned through the heirs of a former owner, and the defendant either alone or in connection with the complainant is in possession, it is not permissible for the defendant to set up or prove an outstanding title in a third person derived from such former owner, where the defendant does not connect himself in any way with such outstanding title, and the owner of such outstanding title is not in possession of any portion of the land.

7. Under sections 1490-1497, Rev. Stats. of 1892, courts of equity have authority to entertain bills for partition when brought by one or more of several joint tenants, tenants in common or coparceners, against their cotenants, coparceners or others interested in the lands, and to adjudicate the rights and interests of the respective parties therein even though one of the joint owners has ousted the other, or claims adversely under a legal title, or disputes the other's title or right to possession. But the action for partition can not under this statute be used as a substitute for the action of ejectment, nor for the sole purpose of testing a legal title. Whenever the case is properly one of partition, one whose *bona fide* object is the partition of lands between *common owners* thereof, one or more of whom are complainants and the others are defendants, and they or some of them are in possession, then all controversies between them as to the legal title and right of possession may and should be settled by the chancellor, as authorized by the statute.

8. The provisions of the constitution of 1845, as well as the subsequent constitutions of 1865, 1868 and 1885, guaranteeing the right of trial by jury, secure the right in those cases only in which it was enjoyed when the constitution became effective, and do not confer upon every party in all classes of cases a right of trial by jury. The statute relating to partition (secs. 1490-1497, Rev. Stats. of 1892) having been enacted in 1844, before the first constitution was adopted, is valid though it deprives parties of the right to a trial by jury in the cases therein provided for.

9. In suits for partition, the rights and interests of necessary and indispensable parties can not be adjudicated when they are not properly before the court.

10. A decree in partition, which, after adjudicating that complainant and defendant are each owners of certain undivided interests in the land sought to be partitioned, reserves for future

228      SUPREME COURT OF FLORIDA,

Camp Phosphate Co. v. Anderson, Trus., *et al.*—Statement of Case.

adjudication the right, title and interests of the defendant to a certain other undivided interest, the legal title to which it finds to be in a known third person not a party to the suit, is erroneous, even though the decree states that it appears from the evidence that the defendant is in equity entitled to a conveyance from such third person.

This case was decided by Division B.

Appeal from the Circuit Court for Citrus county.

### Statement.

On April 12th, 1902, appellee, Herbert L. Anderson as trustee, filed his bill against appellant and one Charles Jones, seeking partition of certain real estate situated in Citrus county. It was alleged that complainant, as trustee for himself and R. L. Anderson, was the owner of an undivided 5-7 interest in said land; that the Camp Phosphate Company was the owner of the remaining 2-7 interest; that "according to the best knowledge and belief of complainant, the names and places of residence of the several owners, joint tenants, tenants in common and others interested in the land, are R. L. Anderson and H. L. Anderson, who reside at Ocala, Florida, Camp Phosphate Company, which is a Florida corporation, and Charles Jones who resides in Citrus county, Florida;" that Jones' interest, whatever it may be, is held under and in subordination to the right and title of the Camp Phosphate Company; that the United States conveyed the land by patent to Nancy J. Hatcher December 1, 1890; that Nancy J. Hatcher died about May 3, 1891, leaving as her heirs at law her husband, J. J. Hatcher, and Charles D. Hatcher, a son by that marriage, and the following named children of a former marriage, *viz*: Early L. Clark, Beulha E. Mills, Julia A. Mills, Green M. Clark and Thomas S. Clark; that Early Clark died about April 4th, 1892, without issue, and leaving no father or mother surviving, and that upon his death his undivided interest in the land de-

VOL. 48, JUNE TERM, 1904.          229

Camp Phosphate Co. v. Anderson, Trus., *et al.*—Statement of Case.

scended to his brothers and sisters; that about October 24, 1900, Beulha E. Mills, Julia A. Mills, Green M. Clark and Thomas S. Clark conveyed all their several interests in the land to J. D. Stalvey; that about November 12, 1900, Stalvey and wife conveyed the same to J. W. Hicks; that about November 2, 1900, Hicks conveyed all his interest in the land to complainant, as appears upon the public records of Citrus county, where all said conveyances are recorded; that J. J. Hatcher and Charles D. Hatcher conveyed their several interests as such heirs of Nancy J. Hatcher in and to said lands to the Camp Phosphate Company; that complainant is in possession of said lands or a portion thereof, claiming title to said 5-7 undivided interest under the said heirs of Nancy J. Hatcher, and that the Camp Phosphate Company is also in possession of a portion of said property, claiming title thereto under the said Charles D. Hatcher and J. J. Hatcher, heirs of said Nancy J. Hatcher, deceased. The bill was subsequently amended, but as the amendment merely seeks an injunction restraining defendants from interfering with the possession of complainant, it is not deemed necessary to set it forth at length.

The defendant, Camp Phosphate Company, demurred to the bill, the grounds of demurrer being: 1. The residence of the defendant is not stated.

2. The bill does not aver seisin in fee or legal title in complainant, the averment of ownership being a mere conclusion of law.

3. The bill does not aver the requisite possession for partition.

4. The bill does not aver what estate complainant represents as trustee, nor the character and nature of the trust.

5. It appears from the bill that R. L. Anderson is a necessary defendant.

6. The bill does not allege facts showing the nature of the estate owned by the complainant or defendant, or whether the estate is legal or equitable.

7. The bill does not state any facts entitling complainant to maintain it.

8. The bill is without equity.

The demurrer was overruled. Thereafter defendant filed its answer denying that complainant is the owner of an undivided 5-7 interest in the land described in the bill, alleging that complainant has no legal interest in said property as alleged; admitting that the property was patented to Nancy J. Hatcher by the United States, that Nancy J. Hatcher was the wife of J. J. Hatcher, and had formerly been the wife of Thomas Clark, who died in 1885, that Nancy J. Hatcher died leaving as heirs the parties named in the bill, that Early L. Clark died without issue so that his interest as heir of Nancy J. Hatcher descended to his brothers and sisters, denying that any of the parties named as heirs of Nancy J. Hatcher were entitled to any interest in the land for the reason that Nancy J. Hatcher and her husband prior to her death, in the year 1890, executed a warranty deed of conveyance by which she conveyed the property to the Anglo-American Phosphate Company, alleging that the Anglo-American Phosphate Company still holds the title and has never conveyed same to any person whomsoever; denying that complainant was in possession of the lands or any portion thereof at the time the suit was instituted, alleging that at the commencement of the suit and for several years prior thereto the defendant was in possession of the land, having a portion of same under fence cultivating and using the balance for wood and other purposes, claiming title thereto adversely to all persons whomsoever under and by virtue of a deed of conveyance from one Daniel Clark and Walter Ray made August 29, 1898; that Clark and Ray had held possession of the land several years adversely to all persons under a deed of conveyance from the State of Florida, made in February, 1898; that the deeds mentioned were adverse to the title under which complainant claims. The defendant insisted in the answer that the title so claimed by it could not be settled in a court of equity by

a bill for partition, but must be settled by an action at law in which it would be entitled to a jury trial. The answer also alleges that the defendant "in order to strengthen the title already obtained by it, purchased whatever right, title or interest Joseph J. Hatcher had in and to the said property;" that defendant also purchased whatever interest the said Thomas S. Clark had in the property described for the same purpose; that one W. N. Camp purchased the right, title and interest of Charles D. Hatcher, one of the parties named as heirs of Nancy J. Hatcher, at a commissioner's sale of the property, and has never conveyed his interest to any person whomsoever; that defendant, Charles Jones, had no interest in the property, but is in possession of same merely as agent for the Camp Phosphate Company. The answer also alleges that Beuhla E. Mills never executed a deed conveying her interest in the property separate and apart from her husband, she being a married woman, and that the deeds of conveyance executed by G. M. Clark, Julia A. Mills and Beuhla E. Mills were procured in consequence of certain fraudulent representations on the part of the agents of Stalvey, the grantee, particularly set forth in the answer.

The complainant filed his replication to this answer and his præcipe for dismissal of the bill as against the defendant, Jones. Testimony was taken by both parties, and the cause came on for hearing, at which the court made an order August 1, 1903, which after stating that objection was made in argument that R. L. Anderson was not a party to the suit, made him a party complainant; and on the same day R. L. Anderson filed his waiver of any right to plead, introduce testimony or take any further proceeding as to pleadings or evidence, and filed a document adopting the allegations of all pleadings of complainant and the evidence, and asking that the court proceed to final hearing upon the pleadings and proofs as they stood.

The defendant moved the court to remand the cause to rules to enable it to file such pleadings as it might be

advised was necessary by reason of the presence of the new party complainant. This motion was denied, and on August 3, 1903, the court overruled certain objections to testimony interposed by defendant, and entered a decree that the equities of the cause were with complainants; that H. L. Anderson as trustee for himself and R. L. Anderson, was the owner of an undivided 5-7 interest in the land described in the bill, and was entitled to partition of same; that the defendant was the owner of an undivided 1-7 interest in the same land; that the right, title and interest of said defendant as to the remaining 1-7 interest be left for such future adjudication in the cause as the interest or title of said defendant or of W. N. Camp therein might be shown to exist or be decreed by the court thereafter, it appearing that the legal title to such interest is in W. N. Camp, while the equitable title is in the defendant. The decree also appointed commissioners to make partition of the lands therein decreed according to law, adjudged the costs between the parties and continued the cause for such further orders and proceedings as might be necessary for the purpose of carrying out the decree. The commissioners appointed under this decree made their report that partition could not be made without great prejudice to the owners of the property. The defendant filed objections to this report which were overruled, and an order entered confirming the report, on September 12, 1903. On September 18th, 1903, the court entered an order reciting the report of the commissioners and its confirmation, and decreeing the sale of the property by the commissioners upon terms and conditions therein named. From this last decree the present appeal was entered by the defendant. There are fifty-one assignments of error, three of which are based upon the decree appealed from, while the others question the propriety of the various rulings made and decrees entered anterior to that decree. Other facts are stated in the opinion.

*O. T. Green* for appellant.

*R. L. Anderson* for appellees.

PER CURIAM (*after stating the facts*).—The appellees have filed a motion to strike the assignments of error numbered from one to forty-eight inclusive, and ask, in the event that said motion is denied, that this court should refuse to entertain or consider any of the said assignments. We think it advisable to consider and pass upon this motion before proceeding to dispose of the case upon the merits.

The basis of the motion is that the decree made by the chancellor on the 3rd day of August, 1903, settling the equities between the parties, ordering a partition of the lands in question in accordance with the respective interests of the appellants and appellees, to which they were found to be entitled in the said decree, and the appointment of three commissioners therein to make the partition, was the *final* decree rendered in the cause, from which an appeal should have been entered in order to warrant this court in considering any errors assigned thereon or prior thereto. It is further contended by the appellees that the decree rendered by the chancellor on the 18th day of September, 1903, based upon the report of the commissioners, to the effect that partition of the lands in question could not be made without great prejudice to the owners thereof, ordering a sale thereof by the commissioners, from which decree this appeal was taken by appellant, was not the final decree in the cause but only an interlocutory decree.

It is settled by former decisions of this court that, where several interlocutory decrees or orders are made in a case, and only certain ones specified are appealed from, only errors assigned upon the orders so specified can be considered by this court. See *Mann v. Jennings,* 25 Fla. 730, 6 South. Rep. 771; *Lenfesty v. Coe,* 26 Fla. 49, 7

South. Rep. 2; *Wiggins & Johnson v. Williams*, 36 Fla. 637, 18 South. Rep. 859. If then the decree appealed from is not a final decree, but is only an interlocutory decree, we are restricted to a consideration of the errors assigned thereon.

The first question to be determined, then, is as to whether or not the decree of the 3rd day of August, 1903, is a final decree. We are of the opinion that this question must be answered in the negative. *Putnam v. Lewis*. 1 Fla. 455, is directly in point, expressly holding that a decree for the partition of lands, ascertaining the interest of the respective parties and appointing commissioners to make partition of the lands according to the respective rights and interests of the parties as therein determined, is not a final but an interlocutory decree. We have given this question a fresh investigation and find that the principle as laid down in *Putnam v. Lewis, supra,* is sustained by the great weight of authority. See *Gudgell and Austin v. Mead,* 8 Mo. 53; *McMurtry v. Glascock,* 20 Mo. 432; *Stephens v. Hume,* 25 Mo. 349; *Ivory v. Delore,* 26 Mo. 505; *Durham v. Darby, Adm'r,* 34 Mo. 447; *Papin v. Blumenthal,* 41 Mo. 439; *Hinds v. Stevens,* 45 Mo. 209; *Parkinson v. Caplinger,* 65 Mo. 290; *Murray v. Yates,* 73 Mo. 13; *Holladay v. Langford,* 87 Mo. 577; *Turpin v. Turpin,* 88 Mo. 337; *Bobb v. Graham,* 89 Mo. 200, 1 S. W. Rep. 90; *Holloway v. Holloway,* 97 Mo. 628, 11 S. W. Rep. 233; *Buller v. Linzee,* 100 Mo. 95, 13 S. W. Rep. 344; *Rhorer v. Brockhage,* 15 Mo. App. 16; *Griffin v. Griffin,* 10 Ind. 170; *Cook v. Knickerbocker,* 11 Ind. 230; *Hunter v. Miller,* 11 Ind. 356; *Wood v. Wilkinson,* 13 Ind. 352; *Clester v. Gibson,* 15 Ind. 10; *Davis v. Davis,* 36 Ind. 160; *Kern v. Maginniss,* 41 Ind. 398; *Rennick v. Chandler,* 59 Ind. 354; *Jackson v. Myers,* 120 Ind. 504, 22 N. E. Rep. 90; 23 N. E. Rep. 86; *Beebe v. Griffing,* 6 N. Y. 465 (2 Selden); *Tilton v. Vail,* 117 N. Y. 520, 23 N. E. Rep. 120; *Gates v. Salmon,* 28 Cal. 320; *Peck v. Vandenberg,* 30 Cal. 11; *Peck v. Courtis,* 31

Cal. 207; *Gilleylen v. Martin,* 73 Miss. 695, 19 South. Rep. 482; *Gessell's Appeal,* 84 Pa. St. 238; *Christy's Appeal,* 110 Pa. St. 538, 5 Atl. Rep. 205; *Appeal of Wistar,* 115 Pa. St. 241, 8 Atl. Rep. 797; *Elder v. McClaskey,* 70 Fed. Rep. 529; *Green v. Fisk,* 103 U. S. 518; *Berryman v. Haden,* 112 Ga. 752, 38 S. E. Rep. 53. We do not commit ourselves to all that is said in the opinion just cited, nor are we prepared to adopt or approve all of their reasoning. Our object in citing them is to show that they sustain the principle enunciated by this court in *Putnam v. Lewis, supra,* that such a decree as that entered by the chancellor in this cause on the 3rd day of August, 1903, is not a final decree. We are not unmindful of the fact that some authorities may be cited to the contrary. See *Williams v. Wells,* 62 Iowa 740, 16 N. W. Rep. 513; *Damouth v. Klock,* 28 Mich. 163; *McRoberts v. Lockwood,* 49 Ohio St. 374, 34 N. E. Rep. 734; *Cannon v. Hemphill,* 7 Texas 184; *McFarland v. Hall,* 17 Texas 676; *White v. Mitchell,* 60 Texas 164; *Talbot v. Todd,* 7 J. J. Marsh. (Ky.) 456; *Banton v. Campbell,* 2 Dana (Ky.) 421; *Allison v. Drake,* 145 Ill. 500, 32 N. E. Rep. 537; *Ames v. Ames,* 148 Ill. 321, 26 N. E. Rep. 110. We have given these authorities a careful examination but after doing so are of the opinion that the conclusion upon the point in question reached by this court in *Putnam v. Lewis* is correct, and we must follow it. Also see 2 Ency. of Pl. & Pr. 144, and 2 Cyc. 603, where many authorities are cited.

The next question which confronts us in passing upon this motion, is as to whether or not the decree of September 18th, 1903, ordering a sale of the lands in question, was final or interlocutory. Upon this point the authorities are in irreconcilable conflict. A number hold that such a decree is interlocutory only, the final decree being that which confirms the sale as made by the commissioners. See to this effcet a number of the Missouri cases already cited and, in addition thereto, as bearing upon this point, *Cawthon v.*

236      SUPREME COURT OF FLORIDA.

Camp Phosphate Co. v. Anderson, Trus., *et al.*—Opinion of Court.

*Searcy,* 12 Lea (Tenn.) 649; *Meek v. Mathis,* 1 Heisk. 534; *Abbott v. Fagg,* 1 Heisk. 742; *Thurston v. Belote,* 12 Heisk. 249; *Stevens v. McCormick,* 90 Va. 735; 19 S. E. Rep. 742. On the contrary, the following authorities either expressly hold or strongly intimate that the decree ordering a sale of the lands is the final decree from which an appeal lies: *Vesper v. Farnsworth,* 40 Wis. 357; *Fleenor v. Driskill,* 97 Ind. 27; *Kreitline v. Franz,* 106 Ind. 359, 6. N. E. Rep. 912; *Robinson's Appeal,* 62 Pa. St. 213; *East Coast Cedar Co. v. People's Bank of Buffalo, N. Y.,* 111 Fed. Rep. 446; *Green v. Fisk,* 103 U. S. 518. As was said in *Robinson's Appeal, supra,* in holding such a decree to be final, "The reason is, that the decree condemns the property to conversion, and the owner's title to divestiture." And, as was said in *Fleenor v. Driskill, supra,* "A decree in partition for the sale of the lands, after it has been ascertained that they can not be properly divided, is as much a final disposition of the cause as the confirmation of the report of commissioners making partition of the property." We are of the opinion that this reasoning is sound and that these authorities lay down the better rule. As was said in Story's Eq. Pl., sec. 408, "But the decree is *final,* in the sense of the rule, which finally adjudicates upon all the merits of the controversy, and leaves nothing further to be done but the execution of it." This language was quoted and approved by this court in *Griffin v. Orman,* 9 Fla. 22, text 47. Also see *Bellamy v. Bellamy,* 4 Fla. 242, text 254, where the following language from the opinion in *Forgay v. Conrad,* 6 Howard 201, is quoted and approved: "When the decree decides the right to the property in contest and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal to this

VOL. 48, JUNE TERM, 1904. 237

Camp Phosphate Co. v. Anderson, Trus., *et al.*—Opinion of Court.

court, although the bill is retained for the purpose of adjusting, by further decree, the accounts between the parties." We would also refer to *State v. White,* 40 Fla. 297, 24 South. Rep. 160, and *Whitaker v. Sparkman,* 30 Fla. 347, 11 South. Rep. 542, for a discussion of what constitutes a final decree.

We are impelled to the conclusion that the decree from which the appeal was entered in the instant case, was a final decree, and, therefore, the motion made by the appellees must be denied.

It may be useful to state that prior to the act of 1852, which is brought forward into the Revised Statutes of 1892, as sec. 1457, an appeal to this court could not be entered from an interlocutory order, but only from the final decree. See *Jacksonville, M. & P. Ry. & Nav. Co. v. Broughton,* 38 Fla. 139, 20 South. Rep. 829, where a history of the legislation upon this matter is given. By reason of this change in the law permitting appeals from interlocutory orders it is not often that we would be confronted with the question which we have just been considering.

We shall not undertake to discuss every assignment of error in detail, but only such as are deemed proper in view of the further progress of the cause.

Several assignments are based on the ruling upon the demurrer to the bill. The first ground of the demurrer questions the sufficiency of the allegations as to the residence of the Camp Phosphate Company. Section 1493, Revised Statutes of 1892, provides that the bill in suits for partition "shall state according to the best of the knowledge and belief of the complainant the names and places of residence of the several owners, joint owners, tenants in common, or coparceners or other persons interested in said lands or real estate * * * but if the names, residence, * * * of any of the owners or claimants of such lands are unknown to the complainants, then it shall be so stated in such bill and

such suit may proceed in the same manner as though such unknown persons or defendants were named in the bill." Conceding, without deciding, that a failure to comply with the requirement as to stating the residence of a defendant in a bill for partition is ground for special demurrer, we think the allegation in the present bill that "according to the best knowledge and belief of your orator the names and places of residence of the several owners, joint tenants, tenants in common and others interested in said land are as follows: R. L. Anderson and H. L. Anderson, who reside at Ocala, Florida, Camp Phosphate Company, which is a Florida corporation, Charles Jones, who resides in Citrus county, Florida," is sufficient to show the name and residence of the defendant "to the best of the knowledge and belief of complainant," which is all the statute requires. In view of the language used, the words, "a Florida corporation," must be construed as stating the residence of the defendant to the best knowledge and belief of the complainant, and that a more particular description, if such is contemplated by the statute, was not within the knowledge of complainant.

The fifth ground of demurrer complains that R. L. Anderson should have been made a party complainant. At a subsequent stage of the cause before the decree of partition was entered, objection was again made that R. L. Anderson was not a party, whereupon the court made him a party complainant. There can be no doubt of the power of the court to make parties at any time before a final decree is entered, and as R. L. Anderson was subsequently made a party, the error, if any, in overruling the fifth ground of the demurrer was cured in the manner stated. The defendant, under the circumstances, is not in a position to insist now that R. L. Anderson is not a proper party complainant, and as the decrees must be reversed on another ground, it does not appear to be necessary to consider whether the court erred in refusing defendant's application to remand the cause to rules, because of the presence of the new party complainant.

The other grounds of demurrer question the sufficiency of the allegations of the bill in respect to the title and possession of the parties. They appear to be sufficient. The bill alleges that the United States conveyed by patent to Nancy J. Hatcher, that she died leaving heirs at law who inherited the property; that some of these heirs conveyed their interests by deed to complainant, and others conveyed their interests by deeds to the defendant; that the complainant and the defendant are in possession of several portions of the land, holding such possession under and claiming title by virtue of the deeds from the heirs. These allegations show legal titles in and to undivided interests in the land in the parties complainant and defendant, derived from heirs who inherited from a common ancestor, and that the parties were in possession of several portions of the property claiming under such title. The quantity or proportionate share held by each is also stated, and from the facts alleged it appears as a matter of law that the parties are tenants in common. This is sufficient to entitle the complainant to partition. *Street v. Benner*, 20 Fla. 700; *Keil v. West*, 21 Fla. 508.

It appears from the answer of the defendant and from testimony introduced by it, that prior to her death Nancy J. Hatcher executed a conveyance of the lands described in the bill to the Anglo-American Phosphate Company. Appellee, over objections of appellant, introduced testimony tending to prove that the conveyance was made upon certain conditions which were never performed; that the phosphate company after the death of Mrs. Hatcher, in pursuance of its agreement with her to reconvey upon non-performance of such conditions, conveyed the property by deed to the administrator of Nancy J. Hatcher, and that after the partition suit was begun, appellee brought proceedings against the administrator and obtained a decree requiring him to convey to appellee an undivided 5-7 interest in the land, upon the theory that as the administrator held the bare legal title he could be compelled to convey such legal title to grantees of

the heirs.   Appellant insists that it was error to admit such testimony.

The bill alleges that the defendants claimed title to undivided interests in the land from certain heirs of Nancy J. Hatcher, and that complainant claimed title to undivided interests from certain other heirs of the same person.   The defendant in its answer claims title from Clark and Ray who derived their title from the State, and not from the Anglo-American Phosphate Company, and also claims to have purchased from certain heirs of Mrs. Hatcher all their right, title and interest in the property, and the proof shows that it did purchase such interests under full warranty deeds, and that it claims title, not only under the Clark and Ray purchase, but under the other purchases also.   The Anglo-American Phosphate Company was not, nor had it ever been, in possession of the property so far as the record shows.   The defendant did not attempt to connect itself in any way with that company, and as it and the complainant both claimed title from a common source, *viz*: Nancy J. Hatcher, we do not think it was permissible for the defendant to set up or prove an outstanding title in the Anglo-American Phosphate Company derived from the common source.   This is the rule in ejectment (*Doyle v. Wade,* 23 Fla. 90, 1 South. Rep. 516), and we think the same rule obtains in partition.   See *St. Andrews Bay Land Company v. Campbell,* 5 Fla. 560, text 567.   Under this view the testimony offered by both parties upon the subject should have been excluded as immaterial, though we do not say its admission would necessitate a reversal of the decrees if no other error appeared.

Other assignments of error insist that under the pleadings and evidence the court should have dismissed the bill, as it had no authority to decide the question of title, or that it should at least have required complainant to establish his title at law, before decreeing partition.

It appears from the testimony that in February, 1898, Clark and Ray obtained tax deeds for the property sought

to be partitioned, and conveyed the same land to defendant in August, 1898; that defendant immediately began cutting timber and wood from the land in large quantities; that on October 30, 1900, it purchased from Joseph J. Hatcher, one of the heirs of Nancy J. Hatcher, all his right, title and interest in the same lands, and procured a full warranty deed purporting to convey same; that on November 1, 1900, the defendant purchased the undivided interest of Thomas S. Clark, another heir of Nancy J. Hatcher, procuring a warranty deed therefor, and that on January 1, 1901, W. N. Camp purchased at a commissioner's sale all the right, title and interest of Charles D. Hatcher, a minor, another heir of Nancy J. Hatcher, and procured a deed therefor from the commissioner. Complainant claims that the tax deeds and the deed from Thomas S. Clark were void, but we are not concerned with that question now. Prior to the fall of 1900, the defendant had cut the timber from most of the land, and for awhile men employed by it had lived in an old house situated on the land, but none of the land was enclosed or cultivated until the fall of 1900. At that time a part of the land, less than eighty acres, was enclosed, and later on a house was built. A small part of the enclosed land was cultivated by a tenant of defendent who occupied the house. The complainant never had possession of any part of the land until the day the bill was filed, when, through an agent, he entered upon a part of the land, erected a wire fence around a few acres, and placed an agent in charge who erected a tent within the enclosure. Shortly after the bill was filed the court granted an injunction against the defendant's interference with this possession of complainant. The defendant claimed to have been in adverse possession of the property from the time it obtained the deed from Clark and Ray, and that complainant's attempt to take possession of a part of the land on the day the bill was filed should not be regarded as giving him rightful possession, nor as dispossessing the defendant. It insisted by its answer and insists now that being in adverse possession and claiming an

48 .Fla—16.

adverse title, the right of possession, and the validity of its alleged title can not be tried in an action for partition, but resort must first be had to an action of ejectment, or other appropriate action at law.

In the absence of a statute authorizing it, a court of equity has no authority generally speaking to adjudicate the validity of an adverse legal title set up by the defendant in a suit for partition, nor to determine the right of possession where there has been an actual ouster by a cotenant, or the defendant is in adverse possession. This rule applied, not only to proceedings in equity for partition under the early English practice, but also to proceedings for partition at law. Sections 1490-1497, Revised Statutes of 1892, regulate proceedings for partition in this State. Such suits are required to be by bill in equity, and must be brought by one or more of several joint tenants, tenants in common, or coparceners against their cotenants, coparceners or others interested in the lands to be divided. The bill is required to describe the lands sought to be partitioned, and to state according to the best of the knowledge and belief of complainant the names and places of residence of the several owners, joint tenants, tenants in common or coparceners or other persons interested in the lands, the quantity or proportionate share held by each, and "such other matters, if any, as may be necessary to enable the court to adjudicate fully upon the rights and interests of the parties." Section 1494 provides in part that "upon application for entry of a final decree, made after a decree *pro confesso,* or after litigation of the cause, the court shall proceed to ascertain and adjudicate the rights and interests of the parties, either by reference to a master, by a hearing upon the pleadings and proofs, or in such other way or manner as may be most convenient and according to the ordinary rules and practice of the court; and shall also decree that partition be made if it shall appear that the parties are entitled to the same." In *Street v. Benner,* 20 Fla. 700, the Circuit Court dismissed the bill for partition because the plea and answer tendered

issues respecting the legal title. This court, construing the statute from which the sections of the Revised Statutes referred to were compiled, in reversing the decree dismissing the bill said: "Construing this statute according to the ordinary rules of construction, the direction to the court to 'ascertain and adjudicate the rights and interests of the parties' involved in the issues made by the pleadings upon the evidence to be taken and submitted according to the usual methods of procedure in chancery is nothing less than a direction to decide and decree what these respective rights are as they may appear from the law and the testimony. There is nothing in the act requiring the court of chancery to ascertain what the verdict of a jury might be upon the facts, but the court must ascertain and decide the rights and interests of the parties upon the evidence before it. * * * The plain meaning of the statute seems to be that all proper issues made in a suit for the partition of lands shall be tried and determined by the court in which the proceeding is commenced and according to its rules, and whatever investigation is necessary to enable the court to adjudicate the rights and interests of the parties may be conducted by it. Having the power the court should exercise it." In *Keil v. West*, 21 Fla. 508, the court says: "It was never sufficient in a case of this kind for the defendant to merely deny complainant's title. He had to answer the bill, and if he proposed to set up a title adverse to complainant, or to dispute complainant's title, he had to discover his own title or show wherein the complainant's title was deficient. The titles being spread upon the pleadings, if the court could see that there was no valid legal objection to complainant's title there was then no reason why the court should not proceed to order partition. When the statement of the title showed a disputed or doubtful legal title, the court could dismiss the bill and send the complainant to law, or maintain the bill till a court of law had settled the title. Where the title was equitable the court of equity could always settle it." The court there referred to and quoted from *Street v. Benner*, certain lan-

guage construing the statute.   It also said: "We do not say that a bill which shows, in compliance with the rule in such cases that a defendant is in possession of the premises, claiming them adversely to complainants would not .oust the equitable jurisdiction; no such case is before us, and in its absence we say nothing." In *Rivas v. Summers,* 33 Fla. 539, 15 South. Rep. 319, the two previous cases are referred to and it is there said that the meaning of the former decision (*Street v. Benner*) is that whenever the case is properly one of partition, one whose *bona fide* object is the partition of lands among common owners thereof, then all controversies as to the legal title may be settled by the chancellor under our statute; but that it was not intended by the statute that a proceeding under it should be used as a substitute for or equivalent of an action of ejectment, or for the sole purpose of testing a legal title or trying an issue as to it." It is admitted in *Rivas v. Summers* that *Street v. Benner* was not overruled by *Keil v. West,* and while the discussion in *Rivas v. Summers* shows some doubt in the minds of the court lest the construction given the statute in *Street v. Benner* might be taken too broadly, still the former construction is not repudiated.   Before the statute was passed equity had authority to entertain suits for partition, and it always had jurisdiction to adjudicate an equitable title in such proceeding.   And in such suits a bare denial of complainant's legal title was not sufficient to send the complainant to law to establish it, but it was necessary for defendant to set out in his answer his own if he claimed adverse to complainant, or to show wherein complainant's title was defective if he denied such title, and if upon the showing made there appeared no valid legal objection to complainant's title the court of equity could proceed with the partition.   It was only when the statement showed a disputed or doubtful legal title that the complainant would be remitted to his action at law.   The defect in the law as it then stood, was, that in all cases where one joint owner had ousted another, or claimed adversely under a doubtful legal title, or disputed the other's

title, such other must maintain two actions, one at law to establish his title or right of possession, the other in equity for partition before he could secure partition of the joint property. If the court of equity could be given authority to determine questions respecting the legal title in the partition suit, extra expense as well as the delay incident to the prosecution of two successive actions, would be avoided, and one court could in the same suit do complete justice. The statute already referred to divests the law courts of power to partition property, vests the power exclusively in courts of equity, and directs them to ascertain and adjudicate the rights and interests of the parties and to decree that partition be made if it appears that the parties are entitled to the same. Instead of directing the equity court to remit the complainant to an action at law, as was the practice before the act was passed, it directs such court to proceed to ascertain and adjudicate the rights and interests of the parties. The language used will bear no other reasonable interpretation, and we can not doubt that the object was to remedy the defect in the law already pointed out. While this is true, it is equally true that the action of partition can not under this statute be used as a substitute for the action of ejectment, nor for the sole purpose of testing a legal title. But whenever the case is properly one of partition, one whose *bona fide* object is the partition of lands between common owners thereof, one or more of whom are complainants and the others are defendants, then all controversies between them as to the legal title may and should be settled by the chancellor under our statute. This is the construction which other courts give to somewhat similar statutes enlarging the equitable jurisdiction in partition, and we are satisfied that this construction which the court in *Street v. Benner,* placed upon the statute is correct and should be adhered to. *Pillow v. Southwest Virginia Imp. Co.,* 92 Va. 144, 23 S. E. Rep. 32, S. C. 53 Am. St. Rep. 804; *Cecil v. Clark,* 44 W. Va. 659, 30 S. E. Rep. 216; *Davis v. Settle,* 43 W. Va. 17, 26 S. E.

246      SUPREME COURT OF FLORIDA,

Camp Phosphate Co. v. Anderson, Trus., *et al.*—Opinion of Court.

Rep. 557. See, also, *Weston v. Stoddard,* 137 N. Y. 119, 33 N. E. Rep. 62, S. C. 33 Am. St. Rep. 697.

The answer of the defendants insists that it is entitled to a jury trial upon the question of legal title, but the construction we give the statute denies that right. Is the statute unconstitutional for that reason? The argument for an affirmative answer is that as the statute places within the jurisdiction of courts of equity which proceed without juries, cases that without the statute could only be tried at law, where a jury trial is a matter of right, it infringes that provision of the constitution securing the right to a jury trial. The statute was enacted in 1844, before the constitution of 1845 became effective, and was re-enacted by the adoption of the Revised Statutes of 1892. The constitution of 1845, as well as the subsequent constitutions of 1865, 1868 and 1885, contain provisions guaranteeing the right of jury trial, but they have all been construed as securing the right in those cases only in which it was enjoyed when the constitution became effective, and not as conferring upon every party in all classes of cases a right of trial by jury. *Flint River Steamboat Co. v. Roberts,* 2 Fla. 102, text 114; *Blanchard v. Raines, Executrix.* 20 Fla. 467; *Hunt v. City of Jacksonville,* 34 Fla. 504, 16 South. Rep. 398. As the act of 1844 had invested the court of equity with power to try legal titles in partition at the time the first constitution, that of 1845, became effective, the provisions relating to jury trial in our constitutions can not be construed so as to take away that power, and consequently the statute is valid. *Pillow v. Southwest Virginia Improvement Co., supra; Davis v. Settle, supra; Cecil v. Clark, supra.*

It appears from the pleadings and the testimony that complainant claimed title to undivided interests in the land sought to be partitioned from certain heirs of Nancy J. Hatcher, and that defendant, who was in possession, also claimed title to undivided interests from certain other heirs of the same deceased party. This makes them tenants in common within the meaning of the statute, even though the

defendant was in exclusive adverse possession and claimed legal title to the whole premises from another source, and under the terms of the statute the court of equity is authorized to adjudicate the rights and interests of the parties, and to this end it may and should determine the validity of the defendant's adverse title as well as the complainant's right to possession.

The decree of partition finds that W. N. Camp holds the legal title to, while the defendant is the equitable owner of an undivided 1-7 interest in the land sought to be partitioned, and although W. N. Camp is not a party to the suit, it proceeds to decree partition between the complainant and the defendant, reserving for future adjudication the question of ownership of the 1-7 interest above mentioned. An assignment of error is based upon this feature of the decree. If W. N. Camp holds the legal title to an undivided 1-7 interest in the property, he is a tenant in common with the complainant and the defendant who are decreed to be the owners of the legal title to separate undivided interests in the same property and is, therefore, a necessary and indispensable party to the suit. The statute requires the suit to be brought by "one or more of several joint tenants, tenants in common or coparceners, against their cotenants, coparceners or others interested in the lands to be divided." It requires all of such cotenants or coparceners to be made parties to the suit if known. In such suits the rights and interests of necessary and indispensable parties can not be adjudicated when they are not properly before the court. *Nelson v. Haisley,* 39 Fla. 145, 22 South. Rep. 265. It was error, therefore, for the court to decree partition, or to determine that the defendant was the equitable owner of the interest to which W. N. Camp held the legal title, as W. N. Camp was not a party to the suit, and could not be bound by the decree. Nor was that portion of the decree authorized by the latter part of section 1494, Rev. Stats., which provides that: "When the rights and interests or proportions of the complainants are clearly established to the satisfaction

of the court, or are undisputed, the court may by decree order partition to be made, and the shares, proportions or interests of the complainant or complainants, and such of the defendants as have established and satisfactorily proved their respective shares, interests or proportions to be set off and allotted to them leaving for future adjustment (by further proceedings in the same cause) the rights, shares and interests of the other defendants," for that provision contemplates that the rights, shares or interests to be reserved for future adjustment must be of some person who if known must be a party defendant to the suit. It can not be construed as authorizing the court to decree partition, and if that can not be had, a sale of the property, where only a part of the several known joint tenants, tenants in common or coparceners are parties to the suit, nor as authorizing it to decree that the equitable title to a portion of the property is in a defendant where the legal title stands in the name of a known person not a party to the suit. For this error in the decree it must be reversed.

Other interesting questions are presented, but as we reverse the decree because of a defect in respect to parties, we do not deem it advisable or necessary to discuss them at this time.

The decrees directing partition, confirming the report of the commissioners, and directing sale of the property are reversed and the cause is remanded for such further procedings as may be necessary and proper, consistent with this opinion. Appellees will be required to pay the cost of this appeal.

CARTER, P. J., and SHACKLEFORD and WHITFIELD, JJ., concur.

TAYLOR, C. J., and HOCKER and COCKRELL, JJ., concur in the opinion.